IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02467-EWN-KLM

**MOHAMMED SALEH,**

    Plaintiff,

v.

**FEDERAL BUREAU OF PRISONS,
HARLEY LAPPIN, JOHN VANYUR,
MICHAEL NALLEY, RON WILEY, and
"FNU" REILLEY, sued in their official
capactities**

    Defendants.

---

Civil Action No. 06-cv-01747-EWN-KLM

**EL SAYYID A. NOSAIR,**

    Plaintiff,

v.

**FEDERAL BUREAU OF PRISONS,
HARLEY LAPPIN, JOHN VANYUR,
MICHAEL NALLEY, RON WILEY, and
"FNU" REILLEY, sued in their official
capacities,**

    Defendants.

---

Civil Action No. 07-cv-00021-EWN-KLM

**IBRAHIM ELGABROWNY,**

    Plaintiff,

v.

**FEDERAL BUREAU OF PRISONS,
HARLEY LAPPIN, JOHN VANYUR,**

1

**MICHAEL NALLEY, RON WILEY, and
"FNU" REILLEY, sued in their official
capacities,**

    Defendants.

## FIRST CONSOLIDATED COMPLAINT

### Introduction

Plaintiffs Mohammed Saleh, El Sayyid Nosair, and Ibrahim Elgabrowny, who are incarcerated at the Administrative Maximum Security Prison ("ADX") in Florence, Colorado, by their attorneys, the University of Denver Sturm College of Law Student Law Office, submit their first consolidated complaint for violations of the First, Fifth, and Eighth Amendments to the United States Constitution, and the Religious Freedom Restoration Act (RFRA).

### Jurisdiction and Venue

1. This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 1346, 2201, and 2202.

2. Venue is proper within this district pursuant to 28 U.S.C. § 1391 as the majority of the Defendants reside here and the majority of the events giving rise to Plaintiffs' claims occurred in this judicial district.

### Parties

3. Plaintiff MOHAMMED SALEH is a prisoner in the custody of the United States Federal Bureau of Prisons, who has been continuously confined in ADX since February 2003.

4. Plaintiff EL-SAYYID NOSAIR is a prisoner in the custody of the United States

Federal Bureau of Prisons, who has been continuously confined in ADX since September of 2002.

5. Plaintiff IBRAHIM ELGABROWNY is a federal prisoner in the custody of the United States Bureau of Prisons, who has been continuously confined in ADX since August 2, 2002.

6. Defendant FEDERAL BUREAU OF PRISONS ("BOP") is an agency of the United States charged with the confinement of prisoners in federal prison facilities.

7. Defendant HARLEY LAPPIN is the Director of the BOP.  At all relevant times Defendant Lappin had decision making authority regarding transfer and placement of prisoners in prisons operated by the BOP, such as ADX - Florence.

8. Defendant MICHAEL NALLEY is BOP Regional Director for the North Central Region.  At all relevant times Defendant Nalley had decision making authority regarding transfer and placement of prisoners in prisons operated by the BOP within the North Central Region, an area that includes Florence, Colorado.

9. Defendant RON WILEY is the Warden of ADX.  Defendant Wiley, as Warden, at all relevant times was responsible for the administration, operation, maintenance, policies, procedures and functions at ADX Florence, including decisions regarding an inmate's ability to participate in the step-down program and placement in a less restrictive unit, the ability of prisoners to practice their religious faith and the amount and type of exercise opportunities that a prisoner receives.

10. Defendant "FNU" REILLEY is the Chaplain at ADX, responsible for managing the Religious Services Department at ADX, including all matters relating to the accommodation of prisoners' religious needs and activities.

11. Defendants Lappin, Nalley, Vanyur, Wiley, and Reilley are sued in their official capacities as employees or agents of the United States acting under color of federal law.

## General Facts

12. Plaintiffs are all incarcerated at the Administrative Maximum Security Prison, in Florence, Colorado (ADX).

13. According to the BOP's Program Statement P5100.08, ADX is designed for male inmates who have demonstrated an inability to function in a less restrictive environment without being a threat to others or to the secure and orderly operation of the institution.

14. Additionally, ADX is intended only for those inmates with severe or chronic behavior problems that cannot be addressed in any other Bureau institution.

15. The conditions at ADX are more restrictive than any other form of incarceration within the Bureau of Prisons system.

## Facts for Claim 1:

**DEFENDANTS RESTRICTIONS ON PLAINTIFFS' RELIGIOUS PRACTICE WAS IN VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE RELIGIOUS FREEDOM RESTORATION ACT (RFRA)**

16. The First Amendment of the United States Constitution allows the free exercise of religion.

17. RFRA applies to the federal government, and to the Federal Bureau of Prisons, as an agent thereof.

18. RFRA states that the government shall not substantially burden religious exercise without compelling justification.

4

19. BOP Program Statement P5360.09 states that all federal prisons will "provide inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices."

20. Each of the Plaintiffs has a sincerely held belief in the religion of Islam.

21. On information and belief, an Islamic religious spiritual leader, an imam, is brought into the prison approximately two to three times a year.

22. On information and belief, for the past couple of years the Defendants have promised to provide an imam on a more regular basis but have failed to achieve that.

23. Providing access to an imam maybe twice a year is not adequate access to spiritual guidance by an imam.

24. A Muslim's ability to have a private spiritual consultation with his imam is an essential tenet of Islam.

25. Plaintiffs' visits with an imam are always observed and subjected to auditory monitoring by an interpreter from ADX's Special Investigative Services (SIS), the Chaplain's Assistant, and/or FBI Agent David Johnson.

26. Other religions are not subject to the same observation and auditory monitoring as the Plaintiffs.

27. The prayer of Azan is a central tenet of the Plaintiffs' ability to express adherence to their faith, Islam.

28. The inability to freely perform the prayer of Azan significantly constrains the Plaintiffs from engaging in an activity that is fundamental to their religion.

29. Plaintiffs are not afforded adequate opportunities to perform the prayer of Azan, also known as the "call to prayer."

30. The prayer of Azan does not interfere with the good order and security of the prison.

31. Defendants and their agents have continuously reprimanded each of the Plaintiffs and threatened them with disciplinary infractions for performing their prayers.

32. For a period of time, the Unit Manager of Delta Unit, "FNU" Sudlow, prohibited the prayer of Azan all together.

33. Defendants have forbidden Plaintiffs from performing Jumu'ah, the mandatory congregate Muslim prayer.

34. Jumu'ah is an important tenet of Islam and must be performed every Friday.

35. Plaintiffs do not receive an Islamic halal diet, which is a central tenet of Plaintiffs' faith.

36. Instead, the prison only affords Muslim prisoners such as these Plaintiffs, a kosher diet, which is prepared specifically for the Jewish faith.

37. There are significant differences between the halal and kosher diets: a different prayer is recited while slaughtering animals for meat; kosher food is often cooked with gelatin and wine, which is prohibited under Islam; moreover, animal fat is often used in kosher diets, which is forbidden by Islam.

38. Defendants have denied Plaintiffs access to books relating to Islam.

39. These books are essential to interpreting Islam, as is dictated by the paramount text of the Islamic faith, the Q'uran.

40. The denial of access to these books is the result of an exaggerated response to the good order and security of the prison.

41. Defendants have prohibited Plaintiffs from accessing on TV any religious programming in Arabic due to an exaggerated response to the good order and security

of the prison.

## Facts for Claim 2:

**DEFENDANTS RESTRICTIONS ON PLAINTIFFS' RELIGIOUS PRACTICE IS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

42. The Equal Protection clause of the Fifth Amendment of the United States Constitution requires that similarly situated persons be treated equally.

43. BOP Program Statement P5360.09 states that all federal prisons "provide inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices."

44. Each of the Plaintiffs has a sincerely held belief in the religion of Islam.

45. An Islamic religious spiritual leader, an imam, is brought into the prison approximately two to three times a year.

46. A full-time chaplain is employed at ADX for Christian prisoners to confer with on a weekly, if not daily, basis.

47. On the rare occasions that an imam is available, Plaintiffs Elgabrowny, Nosair, and Saleh cannot have a private religious consultation such as is afforded Christian prisoners.

48. A Muslim's ability to have a private spiritual consultation with his imam is an essential tenet of Islam.

49. Plaintiffs' visits with an imam are always observed and subjected to auditory monitoring by an interpreter from Special Investigative Services (SIS), the Chaplain's Assistant, and/or FBI Agent David Johnson.

50. On the rare occasions that an imam is available, Plaintiffs Elgabrowny, Nosair, and Saleh are often required to leave their cells in order to speak with the imam while placed in handcuffs and restraints.

51. Prisoners of other religious faiths, such as Christians and Jews, can consult with religious leaders in their cells, free of handcuffs and restraints.

52. Christian prisoners on the Delta Unit are given privacy when speaking with their religious leader.

53. Plaintiffs are not given privacy when speaking with their religious leaders.

54. Plaintiffs do not receive an Islamic halal diet, which is a central tenet of Plaintiffs' faith.

55. Jewish prisoners in ADX are served a kosher diet upon request.

56. Non-Muslims had access to a variety of religious texts until a system-wide purge in February of 2007.

57. Plaintiffs had been denied Islamic texts long before the system-wide purge started this year.

58. These books are essential to interpreting Islam, as is dictated by the paramount text of the Islamic faith, the Q'uran.

59. Non-Muslims have access to closed-circuit religious programming.

60. Defendants have prohibited Plaintiffs from accessing religious programming in Arabic.

**Facts for Claim 3:**

**DEFENDANTS VIOLATED PLAINTIFFS' LIBERTY INTERESTS IN DUE PROCESS UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY TRANSFERRING THEM TO ADX.**

61. Prior to September 11, 2001, Plaintiffs were confined in the general populations of prisons other than ADX where they were out of their cell a good portion of each day, had jobs, and were able to go to the prison chow hall to eat and the exercise yards.

62. On or about September 12, 2001, Plaintiffs were transferred to Special Housing Units (SHU) of their respective prisons.

63. On information and belief, Plaintiffs were told that they were being placed in these SHU for their protection from harm from non-Muslim prisoners.

64. On information and belief, each Plaintiff spent approximately a year in the SHU of their respective prisons and were then transferred to ADX.

65. During this year of confinement in ADX, none of the Plaintiffs engaged in disruptive or assaultive behavior.

66. At the time of their transfers to ADX, none of the Plaintiffs were told why they were being transferred to ADX.

67. Upon their arrival at ADX, the Plaintiffs were not placed on a protective custody unit.

68. Once they arrived at ADX, Plaintiffs were treated by prison staff as if they were sent to ADX due to being assaultive prisoners.

69. Prior to their transfers to Special Housing Units, on September 11, 2001, Plaintiffs had clear conduct records.

70. Plaintiffs were given no notice or hearing regarding their transfers to ADX.

71. Plaintiffs were given no information on grieving or appealing their transfers to ADX.

72. Plaintiffs' confinements in ADX impose a significant hardship in relation to the ordinary incidents of prison life, and have worked and continue to work major disruptions in Plaintiffs' environments

73. Each of Plaintiffs had liberty interests in avoiding transfer to ADX because such transfers imposed significant hardship on inmates in relation to the ordinary incidents of prison life.

**Facts for Claim 4:**

**DEFENDANTS VIOLATED PLAINTIFFS' LIBERTY INTERESTS IN DUE PROCESS UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY FAILING TO COMPLY WITH ADX POLICIES FOR STEP DOWN IN RELATION TO PLAINTIFFS**

74. According to ADX's mission statement, prisoners are eligible to transfer out of ADX through the Step-Down Program upon demonstrating improved behavior and the ability and motivation to reintegrate into an open population prison.

75. In order to be placed in the Step-Down Program and transferred to a less restrictive unit, ADX requires, as dictated in its Institutional Supplement 5321.06F(1), that a prisoner maintain twelve months of clear conduct, participate in prison programs, keep himself and his cell clean, and interact appropriately with staff.

76. Since Plaintiffs were originally placed in Special Housing Unit for their protection and not for being assaultive, Plaintiffs have never been informed by Defendants or their agents how they can demonstrate improved behavior and the ability and motivation to reintegrate into an open population prison so that they can earn their ways out of ADX.

77. Even though Plaintiffs were placed into ADX for protection and not for being assaultive, Plaintiffs have complied with all of the above requirements for Step Down.

78. Each has maintained at least twelve months of good behavior, completed numerous classes, and complied with the prison's sanitation standards.

79. Plaintiffs have not acted in any way that would suggest that they are security risks.

80. Each has demonstrated good behavior and the ability and motivation to reintegrate into an open population and eventually transfer into a general population prison.

81. Plaintiff Elgabrowny has been incarcerated in ADX since August 2, 2002, and was not placed in the first-level of the Step Down program until July 19, 2007.

82. Plaintiff Saleh has been incarcerated in ADX since February, 2003, and was not placed in the first-level of the Step Down program until April 17, 2007.

83. Plaintiff Nosair has been incarcerated in ADX since September, 2002, and has yet to be placed in the first-level of the Step Down program.

84. Plaintiffs were not afforded notice or hearing regarding BOP decisions about their being placed in ADX.

85. Plaintiffs were not afforded notices or hearings at the end of each year of meeting the criteria of the Step-Down program before being denied to advance to the next week.

### Facts for Claim 5:

**DEFENDANTS VIOLATED THE CRUEL AND UNUSUAL PUNISHMENT CLAUSE OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY HOLDING THE PLAINTIFFS IN INDEFINITE SOLITARY CONFINEMENT**

86. The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment.

87. Plaintiffs have been subjected to extreme solitary confinement and reduced environmental stimulation within ADX for several years without any hope of release into a general population unit.

88. The denial of advancement to and through the Step-Down program was done in an arbitrary and capricious manner.

89. Conditions at ADX are more restrictive than any other form of incarceration within the BOP system.

90. At ADX, Plaintiffs are confined to 8' x 12' concrete cells for at least 23 hours a day.

91. Defendants discourage Plaintiffs from verbal contact with other prisoners: Plaintiffs' cells are structured to curtail conversation between fellow prisoners; moreover, Plaintiffs must exercise by themselves as well as take their meals alone in their cells.

92. These conditions deprive Plaintiffs of access to direct sunlight or natural light and adequate exercise.

93. Defendants limit Plaintiffs' opportunities to contact the outside world to two 15 minute telephone calls with an immediate family member per month and one brief non-contact social visit a month with an immediate family member separated by a thick piece of glass and through a telephone.

94. Further, any time Plaintiffs are transported out of their cells they are subjected to extreme physical discomfort: they are subjected to an invasive strip search and are then not only handcuffed, but also shackled to chains protruding from a black box suspended by a chain wrapped around their stomach. Additionally, they are shackled at their ankles.

95. Following each transport, Plaintiffs are strip-searched again.

96. Despite the severe psychological damage that can arise from these conditions, Defendants restrict Plaintiffs' access to mental health care to impersonal sessions conducted via television through a closed circuit signal.

97. The deliberate indifference of Defendants has resulted in Plaintiffs suffering deprivations that cause mental harms that go beyond the boundaries of what most

human beings can psychologically tolerate.

98. Plaintiffs' prolonged and indefinite solitary confinement is causing them severe psychological damage, such that mental illness and mental incompetence threaten to debilitate them.

99. The lack of exercise, lack of contact with the outside world, lack of religious freedoms, and lack of human contact has further compounded the Plaintiffs' mental anguish, resulting in a wanton and unnecessary infliction of pain by Defendants.

100. The length of Plaintiffs' solitary confinement, the indefinite nature of such confinement, and other conditions depriving Plaintiffs of basic life necessities result in cruel and unusual punishment.

### Facts for Claim 6:

**DEFENDANTS VIOLATED THE CRUEL AND UNUSUAL PUNISHMENT CLAUSE OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY FAILING TO PROVIDE ADEQUATE AND MEANINGFUL EXERCISE IN RELATION TO THE PLAINTIFFS**

101. The Eighth Amendment to the United States Constitution forbids cruel and unusual punishment.

102. Defendants have arbitrarily and capriciously denied Plaintiffs adequate exercise.

103. Usually, the Plaintiffs are allowed outdoor exercise only twice a week, one hour at a time.

104. In the past, these Defendants, and their agents, have prohibited any outdoor exercise for as long as two months.

105. When denied outdoor exercise, Defendants have not provided indoor exercise.

106. On the limited occasions when Defendants, or their agents, have afforded Plaintiffs exercise, they require them to exercise in individual 10' x 10' dog-kennel-

like cages with a chain-link fence on all sides, inside a large concrete basin.

107. These cages are so restrictive that Plaintiffs can walk no more than approximately six steps in any direction.

108. These conditions of outdoor exercise are sufficiently restrictive so as to deprive these plaintiffs of any meaningful opportunity to exercise.

109. Plaintiffs are not permitted access to direct sunlight during outdoor exercise.

110. On the few days they are offered outside exercise, it is only in the very early morning hours.

111. At this time, the sun is so low that direct sunlight does not reach above the walls of the concrete basin in which Plaintiffs are confined, thus preventing them from ever experiencing direct sunlight.

112. Each of the Plaintiffs suffer from a substantial risk of serious harm to their physical and mental well being as a result of insufficient opportunities for exercise.

## CAUSES OF ACTION

### Claim 1

**DEFENDANTS RESTRICTIONS ON PLAINTIFFS' RELIGIOUS PRACTICE WAS IN VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE RELIGIOUS FREEDOM RESTORATION ACT (RFRA)**

113. Plaintiffs reallege and incorporate Paragraphs 1 – 112.

114. The First Amendment to the United States Constitution allows the free exercise of religion.

115. RFRA forbids the substantial burden of religious exercise without compelling justification.

116. Plaintiffs have sincerely held beliefs in the religion of Islam.

117. Defendants have substantially burdened the exercise of Plaintiffs' religion.

### Claim 2

**DEFENDANTS RESTRICTIONS ON PLAINTIFFS' RELIGIOUS PRACTICE WAS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

118. Plaintiffs reallege and incorporate Paragraphs 1 – 112.

119. The Fifth Amendment to the United States Constitution requires the equal treatment of similarly situated persons.

120. Defendants do not allow Plaintiffs the same religious practice opportunities they do non-Muslims.

121. Defendants' failures to allow Plaintiffs religious access commensurate with similarly situated prisoners at ADX is a violation of the Equal Protection clause.

### Claim 3

**DEFENDANTS VIOLATED PLAINTIFFS' LIBERTY INTERESTS IN DUE PROCESS UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY TRANSFERRING THEM TO ADX.**

122. Plaintiffs reallege and incorporate Paragraphs 1 – 112.

123. Under the Fifth Amendment to the United States Constitution, Plaintiffs may not be deprived of a liberty interest without due process of law.

124. Defendants transfers of Plaintiffs to ADX implicates a liberty interest in avoiding significant hardship in relation to ordinary prison life.

125. Defendants transfer of Plaintiffs to ADX was done in an arbitrary and capricious manner.

126. Defendants denied Plaintiffs their Fifth Amendment rights to due process when they were transferred to ADX without notice or hearing.

### Claim 4

**DEFENDANTS VIOLATED PLAINTIFFS' LIBERTY INTERESTS IN DUE PROCESS UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY FAILING TO COMPLY WITH ADX POLICIES FOR STEP DOWN IN RELATION TO PLAINTIFFS**

127. Plaintiffs reallege and incorporate Paragraphs 1 – 112.

128. Under the Fifth Amendment to the United States Constitution, Plaintiffs may not be deprived of a liberty interest without due process of law.

129. Defendants' delays and failure in placing Plaintiffs in the Step Down program implicates a liberty interest in transitioning out of ADX.

130. Defendants denied Plaintiffs due process when they continued to confine Plaintiffs in ADX without meaningful rights to participate in the decision-making processes regarding their placements in Step Down.

131. In denying Plaintiffs placement in the Step Down program, Defendants and their agents acted in an arbitrary and capricious manner.

### Claim 5

**DEFENDANTS VIOLATED THE CRUEL AND UNUSUAL PUNISHMENT CLAUSE OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY HOLDING THE PLAINTIFFS IN INDEFINITE SOLITARY CONFINEMENT**

132. Plaintiffs reallege and incorporate Paragraphs 1 – 112.

133. The Eighth Amendment to the United States Constitution forbids cruel and unusual punishment.

134. Plaintiffs' indefinite solitary confinement constitutes cruel and unusual punishment.

## Claim 6

**DEFENDANTS VIOLATED THE CRUEL AND UNUSUAL PUNISHMENT CLAUSE OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY FAILING TO PROVIDE ADEQUATE EXERCISE IN RELATION TO THE PLAINTIFFS**

135. Plaintiffs reallege and incorporate Paragraphs 1 – 112.

136. The Eighth Amendment to the United States Constitution forbids cruel and unusual punishment.

137. By limiting Plaintiffs access to sunlight and fresh air, and by limiting their opportunities for exercise to sporadic and infrequent exercise within 10' by 10' cages, Defendants have deprived Plaintiffs of the minimal civilized measure of life's necessities and exposed them to serious physical and mental harm.

138. By subjecting Plaintiffs to such conditions, with knowledge of the dangers that such conditions pose, Defendants have acted, and continue to act, with deliberate indifference and subject Plaintiffs to cruel and unusual punishment.

## Prayer for Relief

Wherefore, Plaintiffs respectfully request this Court grant the following relief:

A       Plaintiffs are entitled to a declaration that the challenged policies and practices denying Plaintiffs their rights to practice their religious beliefs violate the First Amendment to the United States Constitution and RFRA, as well as a permanent injunction against these restriction.

B       Plaintiffs are entitled to a declaration that the challenged policies and practices denying Plaintiffs rights to practice their religious beliefs in a commensurate manner with

similarly situated non-Muslim prisoners violate the Fifth Amendment to the United States Constitution and request that a permanent injunction be issued against these violations.

C Plaintiffs are entitled to a declaratory judgment that Defendants have deprived them of a liberty interest without due process of law in their transfers to ADX and a permanent injunction to return them to their former status.

D Plaintiffs are entitled to a declaratory judgment that Defendants have deprived them of a liberty interest without due process of law in their continued delays and denials of participation in the decision-making process regarding their placements in the Step-Down Program, as well a permanent injunction to give them proper credit for such arbitrary and capricious denial of entry into the Step Down program.

E Plaintiffs are entitled to a declaratory judgment that Defendants' policies and practices subjecting Plaintiffs to prolonged and indefinite solitary confinement violate the Eighth Amendment and a permanent injunction against these practices.

F Plaintiffs are entitled to a declaration that the challenged practices denying Plaintiffs their rights to adequate and sufficient exercise violate the Eighth Amendment, and a permanent injunction against these practices.

G Plaintiffs also request the Court grant them their reasonable attorney's fees, expenses and costs.

H Plaintiffs also request any additional or alternative relief as may be just, proper, and equitable.

Dated: September 27, 2007.

Respectfully submitted,

STUDENT LAW OFFICE

s/ Daniel Manville
Daniel Manville
University of Denver Sturm College of Law
2255 East Evans Avenue, Suite 335
Denver, CO 80208
Tel: 303-871-6140
Fax:  303.871.6847
Email:  dmanville@law.du.edu
Counsel for Plaintiffs

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certified that on September 27, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will serve a copy of the foregoing on the following: Michael C. Johnson and Marcy Cook, Attorneys for the Defendants, United States Attorney's Office, 1225 Seventeenth St., Ste. 700, Denver, Colorado 80202.

/s/Daniel E. Manville
Daniel E. Manville