IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02467-EWN-KLM
(Consolidated with Civil Action No. 06-cv-01747-EWN-KLM and 07-cv-00021-EWN-KLM)

MOHAMMED SALEH,

      Plaintiff(s),

v.

FEDERAL BUREAU OF PRISONS,
MICHAEL MUKASEY,
HARLEY LAPPIN,
JOYCE K. CONLEY,
MICHAEL NALLEY,
RON WILEY, and
MICHAEL MERRILL, all sued in their official capacities,

      Defendant(s).

**and**

EL-SAYYID A.  NOSAIR,

      Plaintiff(s),

v.

FEDERAL BUREAU OF PRISONS,
MICHAEL MUKASEY,
HARLEY LAPPIN,
JOYCE K. CONLEY,
MICHAEL NALLEY,
RON WILEY, and
MICHAEL MERRILL, all sued in their official capacities,

      Defendant(s).

**and**

IBRAHIM ELGABROWNY,

      Plaintiff(s),
v.

FEDERAL BUREAU OF PRISONS,
MICHAEL MUKASEY,
HARLEY LAPPIN,
JOYCE K. CONLEY,
MICHAEL NALLEY,
RON WILEY, and
MICHAEL MERRILL, all sued in their official capacities,

     Defendant(s).
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on **Defendants' Amended Motion to Dismiss the Individually-Named Defendants Sued in Their Official Capacity** [Docket No. 111; Filed October 18, 2007] (the "Official Capacity Motion to Dismiss") and **Defendants' Motion for Partial Dismissal of Plaintiffs' First Amended Consolidated Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6)** [Docket No. 149; Filed February 12, 2008] (the "Partial Motion to Dismiss"). Regarding the Official Capacity Motion to Dismiss, Plaintiffs filed a response on October 22, 2007 [Docket No. 115], and Defendants filed a reply on November 1, 2007 [Docket No. 120]. Regarding the Partial Motion to Dismiss, Plaintiffs filed a response on March 3, 3008 [Docket No. 152], and Defendants filed a reply on March 17, 2008 [Docket No. 158]. The motions have now been fully briefed.

     Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1.C, both motions have been referred to this Court for recommendation. Having considered the pleadings, the case file, and being fully advised regarding the issues, the Court recommends that the Official Capacity Motion to Dismiss be **GRANTED** and that the Partial Motion to Dismiss

be **GRANTED in part and DENIED in part**.

I.  Factual and Procedural Background

Plaintiffs Mohammed Saleh, El-Sayyid A. Nosair, and Ibrahim Elgabrowny each filed a federal lawsuit to address their placement at the United States Penitentiary, Administrative Maximum Prison in Florence, Colorado ("ADX").  Their cases were consolidated on September 24, 2007 [Docket No. 99].  Plaintiffs are currently incarcerated at ADX and serving sentences, in part, for their roles in the 1993 World Trade Center bombings. *See United States v. Rahman*, 189 F.3d 88, 103 (2d Cir. 1999).  On September 11, 2001, the date of the second World Trade Center bombings, Plaintiffs were removed from the general population at the facilities where each was then incarcerated and placed in administrative segregation at those facilities. *Complaint* [#144] ¶ 18.  Each was later reassigned to ADX and placed in the general population unit, *id.* ¶ 27:  Plaintiff Saleh was reassigned in February 2003, Plaintiff Nosair in September 2002, and Plaintiff Elgabrowny in August 2002.[1] *Id.* ¶¶ 81, 83 & 85.

As inmates in the general population unit at ADX, Plaintiffs claim that their freedom is severely limited. *Id.* ¶¶ 47, 49, 51, 53, 55, 57, 59 & 143-51.  They are confined alone to an 8' x 12' cell for at least 23 hours a day.  They are discouraged from communicating with

---

[1] After their reassignments to ADX, Plaintiffs were placed in the general population unit, which they allege is the equivalent of administrative segregation at their previous facilities, i.e., solitary confinement in a cell for 23 hours a day. *Complaint* [#144] ¶¶ 27-29.  However, at ADX, the country's only federal super maximum prison, the term "administrative segregation" is used to refer to an even more restrictive type of confinement than that currently imposed on Plaintiffs. As such, Plaintiffs' use of the term "segregation" throughout their complaint is misleading.  In their Response to the Partial Motion to Dismiss, Plaintiffs assert that although they are in the general population at ADX, the Court should view these conditions as "indefinite solitary confinement" similar to the type of segregation that would be imposed on high-risk inmates at a less-restrictive federal prison. *Response to Partial Motion to Dismiss* [#152] at 13 n.4.

their fellow prisoners in the cells adjacent to them.  They eat their meals alone in their cells, and when they take recreation (usually between 2 and 5 hours per week), they must do so alone.  They are allowed to make two 15-minute telephone calls and to receive one brief noncontact visit per month.  When they are transported from their cells, they are strip searched, handcuffed, and shackled.  Their access to mental health care is also limited to sessions conducted via closed-circuit television feed rather than in person.  Finally, they are not allowed to hold jobs within the prison system.

At ADX, in order to move from the general population unit to a less-restrictive housing assignment – i.e., the intermediate unit, the transitional unit, and the pre-transfer unit – an inmate must be enrolled in the Step-Down Unit Program (or "Program").  *Id.* ¶¶ 71-72; *ADX Step-Down Unit Policy* [#149-5].[2]  At the inception of Plaintiffs' individual lawsuits, none of the Plaintiffs had been enrolled in the Step-Down Unit Program and each remained incarcerated in the general population unit.  Since that time, and before the cases were consolidated, Plaintiff Saleh (April 2007) and Plaintiff Elgabrowny (July 2007) were enrolled in the Step-Down Unit Program.[3]  Enrollment in the Program is also significant

---

[2] Plaintiffs listed the criteria for enrollment in the Step-Down Unit Program in their First Amended Consolidated Complaint.  *Complaint* [#144] ¶ 72.  Defendants attached the ADX Step-Down Unit Policy referred to in the complaint to their Partial Motion to Dismiss [Docket No. 149-5].  Plaintiffs do not dispute the authenticity of this document, and it is central to Plaintiffs' claims.  In addition, the ADX Step-Down Unit Policy has been the subject of litigation and is described in public documents as well.  *See Ajaj v. United States*, No. 03-cv-01959-MSK-PAC, 2006 WL 3797871, at *5 (D. Colo. Dec. 22, 2006) (unpublished decision) (*"Ajaj II"*).

[3] It is unclear from the parties' pleadings whether Plaintiffs Saleh and Elgabrowny remain in the general population unit and are merely eligible to be considered for a step down to the intermediate unit, or have actually been placed in the intermediate unit.  Given that the complaint does not explain the current conditions of each Plaintiff's confinement, and considering the standard of review pursuant to a motion to dismiss, the Court assumes that each Plaintiff's present conditions of confinement are as described in the complaint.

because it is the vehicle through which an inmate can later be moved from ADX to a less-restrictive facility.  However, transition between the levels of the Program is not automatic, in that an inmate must still satisfy certain criteria to be eligible for different placement.

After Plaintiffs' individual cases were consolidated, Plaintiffs filed a First Consolidated Complaint [Docket No. 101].  In response, Defendants filed their Official Capacity Motion to Dismiss the individually-named Defendants [Docket No. 111].  Before that motion could be decided, Plaintiffs were granted leave to amend their complaint and to file a First Amended Consolidated Complaint [Docket No. 143], which is the complaint at issue here [Docket No. 144] (referred to throughout as "complaint").  In their complaint, Plaintiffs added factual allegations to Claim IV related to their confinement in administrative segregation after the September 11, 2001 World Trade Center bombings, but prior to their placement at ADX.  Plaintiffs, who are represented by counsel, allege five claims for relief:

Claim I        Defendants [sic] Actions Violated Plaintiffs' First Amendment Right to Practice Religion;

Claim II       Defendants [sic] Actions Violated Plaintiffs' Right to Practice Religion in Accorance [sic] with [the Religious Freedom Restoration Act];

Claim III      Defendants [sic] Restrictions on Plaintiffs' Religious Practices Are in Violation of the Equal Protection Clause;

Claim IV      Defendants Violated Plaintiffs' Liberty Interests Not to Be Subjected to an Atypical and Significant Hardship in Relation to Ordinary Prison Life; and

Claim V       Plaintiffs Had [sic] a Liberty Interest Not Be [sic] Denied Step-Down for  Failure  to  Mitigate  the  Reasons  for  Their  Placement  in

Segregation.[4]

Plaintiffs seek injunctive relief regarding Defendants' alleged First and Fifth Amendment violations of Plaintiffs' rights. *Complaint* [#144] at 27-28. They also seek reasonable attorney fees, expenses, and costs. *Id.* at 28. Plaintiffs name as Defendants the Federal Bureau of Prisons ("BOP"); Michael Mukasey, U.S. Attorney General; Harley Lappin, Director of BOP; Joyce K. Conley, Assistant Director for Correctional Programs Division of BOP; Michael Nalley, Regional Director of the North Central Region of BOP; Ron Wiley, Warden of ADX; and Michael Merrill, Chaplain of ADX. The individually-named Defendants are sued in their official capacities only.

## II. The Motions

On October 18, 2007, Defendants filed their Official Capacity Motion to Dismiss the individually-named Defendants [Docket No. 111]. They argue that because Plaintiffs' lawsuit brings claims against each individually-named Defendant in his official capacity only, the suit is properly brought solely against the Bureau of Prisons. Before the motion could be resolved, Plaintiffs amended their complaint, prompting Defendants to file a second motion to dismiss.

On February 12, 2008, Defendants filed their Partial Motion to Dismiss [Docket No. 149]. Defendants contend: (1) Claim IV should be dismissed because it is barred by the applicable statute of limitations, and Plaintiffs fail to state a claim that their placement in

---

[4] Plaintiffs also asserted a sixth claim, namely that their incarceration at ADX violates the Eighth Amendment. Prior to the resolution of the pending dispositive motions at issue here, the parties filed a Stipulation of Voluntary Dismissal of Claim VI pursuant to Fed. R. Civ. P. 41(a)(1) [Docket No. 175]. A proper stipulation pursuant to this rule operates as a dismissal of a claim without a court order. As such, the Court considers Claim Six to be dismissed and does not address Defendants' arguments for its dismissal in this Recommendation.

administrative segregation and confinement at ADX violates their Fifth Amendment right to due process; and (2) Claim V should be dismissed (a) as to Plaintiffs Saleh and Elgabrowny because the Court lacks jurisdiction, these Plaintiffs do not have standing, and the claim is moot, and (b) as to all Plaintiffs because they fail to state a claim that they have a liberty interest in placement in the Step-Down Unit Program or that Defendants' delay or failure to place them in the program violated their Fifth Amendment Right to due process. Finally, Defendants reassert their argument from the Official Capacity Motion to Dismiss that the individually-named Defendants should be dismissed.

In response to Defendants' arguments, Plaintiffs contend: (1) as to Claim IV, the statute of limitations should be equitably tolled, Plaintiffs have a liberty interest to be free from changes in confinement or assignments which result in atypical hardships, and they were denied the process that was due when their conditions of confinement were changed and they were placed at ADX; and (2) as to Claim V, the Court's jurisdiction is not defeated by Plaintiffs Saleh's and Elgabrowny's placement in the Step-Down Unit Program, each Plaintiff has a liberty interest in being enrolled the Program, and they were not provided the process they were due because of the delay or denial of enrollment [Docket No. 152]. They further allege that the individual Defendants are essential to their claims and should not be dismissed although they bring only an official-capacity suit.

Defendants filed a reply and noted that (1) Plaintiffs fail to state a plausible Fifth Amendment due process claim regarding their incarceration in administrative segregation and placement at ADX; and (2) Plaintiffs fail to state a plausible Fifth Amendment due process claim regarding enrollment in the Step-Down Unit Program [Docket No. 158]. They reiterate the procedural and jurisdictional deficiencies with Plaintiffs' Claims IV and V, and

again ask the Court to dismiss the individual Defendants from the suit.

## III.  Analysis

### A.      Standard of Review

Defendants seek dismissal of Claims IV and V on the basis of Fed. R. Civ. P. 12(b)(1).  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) may take two forms:  a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th 1995).  When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1) supported by affidavits and other documents, the Courts makes its own factual findings.  *Id.* at 1003.

Defendants also seek dismissal of Claims IV and V on the basis of Fed. R. Civ. P. 12(b)(6).  A court reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must construe the allegations in the complaint in the light most favorable to the plaintiff.  *See, e.g.*, *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court considers whether the complaint contains allegations that support a plausible legal claim for relief.  *Alvarado v. KOP-TV, LLC*, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007); *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1974 (2007) (holding that a complaint must contain "only enough facts to state a claim to relief that is plausible on its face").  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 127 S. Ct. at 1964–65 (internal citations omitted).  The facts in the complaint must sufficiently support all elements

8

necessary to establish entitlement to relief under the legal theory proposed by the plaintiff. *Lane v. Simon*, 495 F.3d 1182 (10th Cir. 2007).

In support of the Partial Motion to Dismiss, Defendants attached an ADX policy which is referenced in Plaintiffs' complaint, is central to their claims, and is not otherwise disputed by Plaintiffs. *See, e.g.*, *supra* note 2. In addition, Plaintiffs and Defendants attached several exhibits that are matters of public record [Docket Nos. 149-2 through -4, 152-5, & 152-9]. *See Vibe Techs., LLC v. Suddath*, No. 06-cv-00812-LTB-MEH, 2006 WL 3404811, at *5 n.2 (D. Colo. Nov. 22, 2006) (unpublished opinion) ("This Court may take judicial notice of court documents and matters of public record."). Generally, when matters outside the pleadings are presented, the motion must be converted to one for summary judgment and reviewed under the standard set forth in Fed. R. Civ. P. 56. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215-16 (10th Cir. 2007). "However, notwithstanding the usual rule . . ., 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* at 1215 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). None of the attached exhibits requires this Court to analyze the Partial Motion to Dismiss under the standards for summary judgment.

B.     Official Capacity Motion to Dismiss[5]

---

[5] The Court notes that the Official Capacity Motion to Dismiss was fully briefed prior to the time that Plaintiffs' filed their First Amended Consolidated Complaint. Ordinarily, the filing of a new complaint would render a previously-filed dispositive motion moot. *See Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006). However, Defendants incorporated the arguments contained in their Official Capacity Motion to Dismiss and resulting pleadings in Part IV of their Partial Motion to Dismiss [Docket No. 149 at 27 n.12 ]. Because the arguments regarding the earlier motion apply to the individual Defendants named in their official capacities in the First Amended Consolidated Complaint, the Court elects to consider the Official Capacity Motion to Dismiss on its merits in conjunction with Part IV of the Partial Motion to Dismiss.

Defendants argue that because Plaintiffs' suit is brought solely against Defendants in their official capacity, the individual Defendants should be dismissed as redundant. *Official Capacity Motion to Dismiss* [#111] at 4-5; *Partial Motion to Dismiss* [# 149] at 27-29. Plaintiffs counter that the individually-named Defendants are necessary to the suit because they are departmental heads of the BOP. *Response to Partial Motion to Dismiss* [#152] at 29. In addition, they suggest that Defendants' argument is an attempt to avoid discovery and is better addressed in a discovery motion. *Response to Official Capacity Motion to Dismiss* [#115] at 4-5 ; *Response to Partial Motion to Dismiss* [#152] at 29-30 .

As a preliminary matter, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). To this end, several courts have dismissed individuals sued in their official capacities where the entity whose policies are at issue is also a defendant. *Smith v. Bd. of County Comm'rs*, 216 F. Supp. 2d 1209 (D. Kan. 2002); *Smith v. Brevard County*, 461 F. Supp. 2d 1243 (M.D. Fla. 2006); *McLin v. City of Chicago*, 742 F. Supp. 994 (N.D. Ill. 1990). Particularly where the individual defendants have not also been sued in their individual capacities, courts have found that the prudent and preferable course is for plaintiffs to sue the entity itself. *Spell v. McDaniel*, 824 F.2d 1380, 1396 (4th Cir. 1987) ("Where, as here, no claim against officials in their individual capacities was made, a simpler, technically correct, and by far preferable structuring would have been to name the [entity] as the sole defendant."); *McLin*, 742 F. Supp. at 997 ("Because the [entity] is already a defendant, dismissing [the individual defendants] does not prejudice plaintiffs, and it clarifies and streamlines the pleadings."); *see also Leach v. Shelby County Sheriff*,

891 F.2d 1241, 1245-46 (6th Cir. 1989) (discussing the inverse situation when only individual defendants and not the entity are named in an official-capacity suit).

While Plaintiffs are correct that no rule mandates that the Court recommend dismissal of the individual Defendants, the Court finds that (1) the Court has authority to recommend such an action; and (2) justice and efficiency would be served by it. Further, as the BOP would remain a Defendant, Plaintiffs would suffer no prejudice from such a result. To the extent that Plaintiffs suggest this issue is better dealt with through a discovery motion, their argument actually supports the Court's decision. If, after dismissal of the individually-named Defendants, Plaintiffs determine that they are hindered in the discovery process, they may seek relief from the Court at that time. The potential impact on discovery of the individual Defendants' dismissal is not before the Court at this time.

But the issue of proper pleadings practice in support of more efficient, effective, and ultimately just litigation is before the Court. Defendants argue, and the Court agrees, that maintaining the action against the individual Defendants is unnecessary. The individual Defendants are redundant in this matter, and dismissal of Plaintiffs' claims against them "is warranted as a matter of judicial economy and efficiency." *Smith*, 216 F. Supp. 2d at 1219. To the extent that Plaintiffs wish to challenge the conduct and actions of individual officials of the BOP, they may do so through their claims against the BOP itself, and "this ruling will have no preclusive effect on plaintiff[s'] claims against [that government entity]." *Id.* at 1220. While Plaintiffs indicate that the individual Defendants are necessary to the litigation, they have failed to substantiate this claim in any meaningful way, or to identify any

prejudice they would suffer if the suit continues only against the BOP.[6]  The Court finds no

prejudice to Plaintiffs and recommends that the Official Capacity Motion to Dismiss and

Part IV of the Partial Motion to Dismiss be **granted**.[7]

C.     Partial Motion to Dismiss

1.     Failure to State a Procedural Due Process Claim – Claim IV

Here, Plaintiffs allege that they were deprived of a liberty interest by their initial

assignment to administrative segregation in separate federal prisons after September 11,

2001 and by their subsequent placement at ADX in the general population.  They claim that

on both occasions they were deprived of their liberty interests without adequate due

process.  A claim relating to a denial of procedural due process must be supported by

allegations that Plaintiffs (1) were deprived of a liberty or property interest (2) without

_____

[6] Plaintiffs allege that the individual Defendants are necessary to the suit, as departmental heads of the BOP, to put them on notice that their policies are in violation of Plaintiffs' constitutional rights.  *Response to Partial Motion to Dismiss* [#152] at 29.  This assertion has nothing to do with proper pleadings practice or the scope of Plaintiffs' legal rights. The Court agrees that if Plaintiffs sued the individual Defendants in their individual capacities based on their individual or supervisory duties, they would be necessary parties.  However, no such allegations are made here.  A litigant's mere desire to get the attention of a particular government official is an inadequate legal basis for joining him as a named party in a lawsuit.

[7] Plaintiffs also contend that the Court should not intrude on the Plaintiffs' choice of Defendants.  *Banks v. Gonzales*, 415 F. Supp. 2d 1248, 1251-52 (N.D. Okla. 2006).  *Banks* is inapposite because it involved substitution of a party pursuant to Fed. R. Civ. P. 21 when the entity was not named as a defendant.  Although that court determined there was "no procedural or substantive reason to disturb Plaintiffs' choice to name . . . the individual Defendants in their official capacities," *id.* at 1252, the Court here is not presented with the same situation.  The entity (BOP) is already named by Plaintiffs, and the Court agrees with the holding of its sister court that when the entity is sued, the individual defendants are superfluous and should be dismissed.  *Smith*, 216 F. Supp. 2d at 1219-20; *see also Burns v. Bd. of Comm'rs*, 197 F. Supp. 2d 1278, 1296-97 (D. Kan. 2002) (noting that it is "redundant, confusing, and unnecessary for plaintiff to sue the [individual defendants]" and "[a]lthough there is no Tenth Circuit decision on point, dismissal of plaintiff's redundant § 1983 claim is warranted as a matter of judicial economy and efficiency").

constitutionally required safeguards. *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972).[8]

a. Statute of Limitations

Defendants first argue that Plaintiffs' challenge to their transfers to administrative segregation at their prior facilities after September 11, 2001 ("post-September 11, 2001 segregation") is barred by the applicable statute of limitations. *Partial Motion to Dismiss* [#149] at 20-21. Defendants contend that a six-year statute of limitations applies to this claim. *See* 5 U.S.C. § 702; 28 U.S.C. § 2401(a); *see also Jordan v. Sosa*, No. 05-cv-01283-PSF-PAC, 2006 WL 3289020, at *11 (D. Colo. Nov. 6, 2006) (unpublished decision). As such, Defendants argue that the time period for Plaintiffs to bring this claim expired on September 11, 2007. Plaintiffs did not bring this claim until January 2008 when they were given leave to amend their complaint. Plaintiffs do not disagree that a six-year statute of limitations applies to this claim, or that they filed it after the six-year deadline. Rather, they allege that the statute should be equitably tolled. *Response to Partial Motion to Dismiss* [#152] at 14-15.

Because the statute of limitations at issue here derives from a federal statute, the

_____

[8] As an initial matter, the parties disagree as to the breadth and scope of Claim IV. In the Partial Motion to Dismiss, Defendants describe Claim IV as asserting the following violations of law: (1) an alleged due process violation regarding Plaintiffs' location of incarceration since September 11, 2001; (2) an alleged due process violation regarding Plaintiffs' placement in administrative segregation on September 11, 2001; and (3) an alleged due process violation regarding Plaintiffs' placement at ADX. *Partial Motion to Dismiss* [#149] at 15. Plaintiffs attempt to clarify the scope of Claim IV in their Response and assert that they do not challenge the mere location of their confinement after September 11, 2001, but rather their (1) placement in administrative segregation at their prior facilities and (2) their placement at ADX. *Response to Partial Motion to Dismiss* [#152] at 13-15. Review of the complaint suggests that Claim IV is best described as contending that Plaintiffs had a liberty interest in avoiding arbitrary placement in administrative segregation after September 11, 2001 as well as placement at ADX, and that they did not receive the process they were due in connection with both of those decisions regarding placement.

13

applicability of equitable tolling is governed by federal precedent. In order to show that the statute of limitations should be equitably tolled, Plaintiffs must prove (1) that they were diligently pursuing their rights; but (2) some extraordinary circumstances prevented them from timely filing their claim. *Lawrence v. Florida*, ___ U.S. ___, 127 S. Ct. 1079, 1085 (2007) (citation omitted).

In their complaint, Plaintiffs assert that "[i]t was not until the first part of 2007 that the Plaintiffs became aware that their removals from general population and placement in segregation . . . [were] based upon their original convictions and their ethnicity." *Complaint* [#144] ¶ 30. In their Response, Plaintiffs also argue that the statute should be equitably tolled because they "did not become aware of the reasons behind their transfers to administrative segregation on September 11, 2001 until early 2007." *Response to Partial Motion to Dismiss* [#152] at 14. The Court finds that Plaintiffs' arguments in support of equitable tolling are unpersuasive.

In both their complaint and Response, Plaintiffs acknowledge that they were aware of the alleged justification for their segregation *prior* to the expiration of the statute. *Complaint* [#144] ¶ 31; *Response to Partial Motion to Dismiss* [#152] at 14 (acknowledging that Plaintiffs became aware of the reasons behind their transfers to administrative segregation in "early 2007"). However, Plaintiffs did not bring this claim until January 2008, several months *after* the statute had expired and more than one year after they learned of the alleged reasons for their segregation. In fact, prior to the consolidation of Plaintiffs' claims, but after they learned of the alleged justification for their segregation, each filed an amended complaint with the assistance of counsel which did not assert any claims regarding their post-September 11, 2001 segregation. Civil Action No. 05-cv-02567-EWN-

KLM [Docket No. 82; Filed July 20, 2007]; Civil Action No. 06-cv-01747-EWN-KLM [Docket No. 72; Filed August 15, 2007]; Civil Action No. 07-cv-00021-EWN-KLM [Docket No. 46; Filed July 2, 2007]. In addition, after consolidation of Plaintiffs claims, they were given leave to file a consolidated complaint close in time to expiration of the statute, but again they did not bring this claim despite their representation by counsel and their acknowledgment that they knew of the reasons for their post-September 11, 2001 segregation at that time [Docket No. 101; Filed September 28, 2007].

In essence, Plaintiffs have made a judicial admission that they were aware of the alleged reason for their segregation prior to expiration of the statute of limitations. *See U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833 n.4 (10th Cir. 2005); *Baker v. Echostar Communs. Corp.*, No. 06-cv-01103, 2007 WL 4287494, at **14-15 (D. Colo. Dec. 4, 2007) (unpublished decision). Plaintiffs' judicial admission places them squarely within the category of cases where the untimely claim is not subject to equitable tolling. *See, e.g.*, *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1235 (10th Cir. 1999) (recognizing that equitable tolling does not apply when a plaintiff is aware of all of the facts necessary to bring a claim at the time required to assert it by the statute of limitations); *Edwards v. Int'l Union, UPGWA*, 46 F.3d 1047, 1055 (10th Cir. 1995) (refusing to apply equitable tolling when at the time of the expiration of the statute of limitations, plaintiff "was fully aware of [Defendants' alleged] misconduct"); *McIntire v. Tulsa County Sheriff*, 121 Fed. Appx. 295, 300-01 (10th Cir. Jan. 5, 2005) (unpublished decision) (noting that equitable tolling only applies when a plaintiff is unaware of his claim at the time the statute of limitations requires it to be asserted). As such, Plaintiffs have not demonstrated that they were prevented from timely filing this claim by Defendants' conduct or by extraordinary circumstances outside

15

of their control.  On the contrary, they knew of this claim prior to its expiration, had ample opportunity to amend their complaint to include this claim within the deadline, but did not do so.  In such a situation, equitable tolling is not applicable.  *See, e.g.*, *Sender v. Mann*, 423 F. Supp. 2d 1155, 1166-67 (D. Colo. 2006) (holding that even if defendants committed fraud to conceal plaintiff's injury, where plaintiff learns of the facts sufficient to assert his injury prior to expiration of the statute of limitations, "equitable tolling is unavailing").

In the alternative, Plaintiffs argue that even if this claim is not subject to equitable tolling, their post-September 11, 2001 "segregation should still be considered [as] part of their underlying claim because this transfer was the beginning of Defendants' ongoing pattern of discrimination against Plaintiffs on the basis of their religion and national origins." *Response to Partial Motion to Dismiss* [#152] at 15.  As Plaintiff's Fifth Amendment claim is not related to discrimination, but rather to whether their segregation constitutes an atypical or substantial hardship, the Court fails to see how this alternative argument saves the claim from dismissal.  *See generally Mayle v. Felix*, 545 U.S. 644, 658-59 (2005) (holding that new claim must arise out of "core of operative facts" of old claim to unite them and overcome an expired statute of limitations applicable to new claim).  To the extent that Plaintiffs intend this to be a "relation back" argument pursuant to Fed. R. Civ. P. 15(c)(1)(B), they have failed to adequately explain their position, and the Court does not consider it.  *See Toth v. Gates Rubber Co.*, No. 99-1017, 2000 WL 796068, at *8 (10th Cir. June 21, 2000) (unpublished decision) (noting that it is the litigant's responsibility to provide concise arguments, supported by relevant facts and specific citations).  Because Plaintiffs have failed to show that the statute should be equitably tolled or to provide sufficient detail and analysis regarding the relation back doctrine, the Court agrees that the statute of

limitations bars Plaintiffs' claim to the extent that it relates to their post-September 11, 2001 segregation. As such, to the extent that Defendants move to dismiss this portion of Plaintiffs' Claim IV, the Partial Motion to Dismiss should be **granted**.

b. Placement at ADX

Although the Court agrees that the portion of Claim IV relating to Plaintiffs' post-September 11, 2001 segregation is time barred, the portion of the claim relating to their placement at ADX remains. The following analysis of the issues asserted in Claim IV relates solely to whether Plaintiffs have stated a plausible due process claim regarding the conditions of confinement imposed on Plaintiffs as a result of their placement at ADX.

The Due Process Clause does not automatically confer a liberty interest to be free from confinement conditions imposed when a prisoner is serving a lawful sentence. *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). Rather, a due process right is triggered when a prisoner suffers an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A determination of what constitutes an atypical and significant hardship necessarily includes consideration of whether the condition in question is a dramatic departure from what would be expected of a person serving a similar sentence. This consideration includes whether the segregation complained of (1) differs significantly from other types of segregation; (2) differs significantly from what it would have been had the prisoner remained in the general prison population; and (3) increases the duration of a prisoner's sentence. *Id.* at 484-87. In *Sandin*, the Supreme Court found that detention in disciplinary segregation for thirty days did not violate a liberty interest. *Id.* at 487.

More recently, the Supreme Court revisited this issue in *Wilkinson v. Austin*, 545

U.S. 209 (2005). Specifically, the Court considered whether prisoners were deprived of a liberty interest by their placement in Ohio's super maximum prison and whether they were provided sufficient process regarding that placement. *Id.* at 213. The Court considered the totality of the conditions at the super maximum prison in determining whether confinement there imposed an atypical and significant hardship. *Id.* at 214-15. The conditions at issue in *Wilkinson* are similar to those complained of here, namely (1) the prohibition of human contact, including conversation between prisoners in neighboring cells; (2) confinement for as many as twenty-four hours per day, with one hour allotted for exercise on certain days, but not every day; and (3) indefinite incarceration at the super maximum prison with limited review regarding the continued propriety of placement there. Also present in *Wilkinson*, but not pled here, was the fact that the lights were left on twenty-four hours a day in each cell and that placement at the super maximum prison disqualified a prisoner for parole. *Id.* Given the totality of these conditions, the Court found that confinement at the super maximum prison constituted an atypical and significant hardship such that a prisoner's incarceration there was subject to due process protections. *Id.* at 220-24.

The Tenth Circuit has also had occasion to address this issue. *Hill v. Fleming*, 173 Fed. Appx. 664, 668-72 (10th Cir. Apr. 4, 2006) (unpublished decision). In *Hill v. Fleming*, the inmate alleged that his confinement in segregation for 399 days, where he was confined for twenty-three hours a days and denied a myriad of privileges that prisoners in the general population were afforded, deprived him of a liberty interest. *Id.* at 666. While the Tenth Circuit ultimately found that the defendants were entitled to qualified immunity, the Court specifically noted that summary judgment was inappropriate on the issue of whether an inmate at USP-Florence had a protected liberty interest in his conditions of confinement

given the genuine factual dispute created by the inmate's claims. *Id.* at 668.

By contrast, in *Jordan v. Federal Bureau of Prisons*, 191 Fed. Appx. 639, 653 (10th Cir. 2006) (unpublished decision), the Tenth Circuit agreed with the district court that summary judgment was appropriate on the issue of whether an inmate confined in segregation at ADX and USP-Florence for five years pending a murder investigation had a protected liberty interest. The inmate alleged that he was denied access to radio, television, education and recreational programs and medical and psychological services. *Id.* at 644. He also alleged that he was limited to one social call per month and his interaction with other inmates and recreation were strictly curtailed. *Id.* The Tenth Circuit found that given the totality of the circumstances, including that the length of the prisoner's sentence was unaffected, his duration of confinement in segregation was not indefinite but tied to the length of the murder investigation, his segregation did not deviate substantially from the conditions imposed upon those in the general population, and the prisoner continued to commit disciplinary infractions further contributing to the length of his segregation, the inmate failed to prove he had a protected liberty interest. *Id.* at 652-53. The Tenth Circuit specifically noted that the conditions complained of were not as onerous as those at issue in *Wilkinson*. *Id.* at 652.

Lastly, the Tenth Circuit addressed whether a hermaphrodite was deprived of a protected liberty interest when she was confined in segregation for the duration of her fourteen-month incarceration. *Estate of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334 (10th Cir. 2007). In addition to a comparison of the prisoner's conditions of confinement with those of the general prison population, the Tenth Circuit also determined that several additional factors should be considered in an analysis related to whether a

19

liberty interest is implicated. Specifically, courts should consider "whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement, as it did in *Wilkinson*; and (4) the placement is indeterminate . . . ." *Id.* at 1342. The Tenth Circuit held that no protected liberty interest was implicated because the prisoner was assigned to segregation for her own protection, she was allowed to be out of her cell for 5 1/2 hours every day, she had access to library, recreational, and religious facilities and other prison programs, the segregation did not lengthen her incarceration, and her assignment was reviewed every ninety days. *Id.* at 1343-44. While the Tenth Circuit also noted that the prisoner was denied interaction with other inmates and her conditions of confinement deviated from those in the general population, the court found that considering the totality of the factors, the prisoner's segregation did not amount to an atypical or significant hardship. *Id.*

Unpublished precedent from courts of this District is also instructive. In *Thompson v. Winn*, 07-cv-00025-MSK-KLM, 2008 WL 901570, **6-9 (D. Colo. Mar. 31, 2008) (unpublished decision), the district court held that a prisoner's complaint regarding his segregation at USP-Florence for approximately 500 days was not appropriate for resolution on a motion to dismiss. The prisoner claimed he was assigned to segregation for his protection as a government witness in a murder case. *Id.* at **1-2 His segregation included confinement in his cell for twenty-three hours per day, handcuffing when he left his cell, restricted access to telephone, showers, recreation, the law library and educational programs, and noncontact visits only with family. *Id.* The court specifically noted that the conditions complained of fell "somewhere between those in *Hill*, where there was arguably

20

a liberty interest, and *Jordan*, where there was not." *Id.* at *6. Given that the prisoner was proceeding *pro se*, the district court concluded that he had stated a plausible due process claim at the motion-to-dismiss stage of the proceedings. The court also noted that the "determination of whether there is a protected liberty interest is highly fact dependent and requires consideration of a number of nonexclusive factors, viewed in their totality." *Id.*

Considering the first factor enunciated in *DiMarco*, namely whether the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation, Plaintiffs argue that they do not fall within the class of inmates that ADX was meant to house. *Complaint* [#143] ¶¶ 38, 46 (indicating that ADX is meant to house inmates who are "predatory or dangerous towards other inmates, staff, or the public," "inmates who have demonstrated an inability to function in a less restrictive environment," and "inmates with severe or chronic behavior problems"). Plaintiffs allege that they have maintained clear conduct records since their initial incarcerations, and they argue that their placement does not serve a legitimate purpose. *Id.* ¶¶ 35, 77, 80; *Response to Partial Motion to Dismiss* [#152] at 16. Defendants counter that Plaintiffs' underlying convictions justify their later placement at ADX. *Partial Motion to Dismiss* [#149] at 16. Given the facts alleged, I find that this factor weighs in favor of Plaintiffs. If Plaintiffs' underlying convictions were the sole justification for their placement at ADX, placement there would have been warranted at the time of their initial incarceration.

Considering the second factor enunciated in *DiMarco*, namely whether the conditions of placement are extreme, Plaintiffs allege that the conditions at ADX, even those within the general population, are the harshest imposed by a prison within the BOP. *Complaint* [#144] ¶ 143. Moreover the conditions are similar to those at issue in *Wilkinson*,

which were found to constitute an atypical and significant hardship. *Response to Partial Motion to Dismiss* [#152] at 16. Defendants counter that the conditions described by Plaintiffs are typical of those experienced by every prisoner in the general population at ADX. *Partial Motion to Dismiss* [#149] at 16-17. While several Tenth Circuit cases have ultimately concluded that ADX conditions do not implicate the deprivation of a liberty interest after a consideration of all the facts and evidence at issue, *Wilkinson* and at least one case from this district recognize that similar conditions may support an allegation regarding deprivation of a liberty interest. *Compare Jordan*, 191 Fed. Appx. at 652-53, *with Wilkinson*, 545 U.S. at 223-24, *and Thompson*, 2008 WL 901570, at *6. In addition, the *Hill* Court noted that similar factual claims are inappropriate for preliminary resolution. *Hill*, 173 Fed. Appx. at 668. I find that this factor also weighs in favor of Plaintiffs.

Considering the third factor enunciated in *DiMarco*, namely whether the placement increases the duration of confinement, Plaintiffs assert that their indefinite incarceration affects their eligibility for parole. *Complaint* [#144] ¶¶ 66, 68 & 191. The fact that an inmate's term of confinement may be impacted by his prolonged placement at a facility was a key consideration to the Supreme Court in *Wilkinson*. *See Wilkinson*, 545 U.S. at 224. However, as Defendants correctly note, there is no eligibility for parole in the federal prison system. *Partial Motion to Dismiss* [#149] at 17 (citing 18 U.S.C. § 3621(a)). Rather, a federal inmate can earn early release through the accrual of good time credit pursuant to 18 U.S.C. § 3624. Given that the Court interprets Plaintiffs' allegations in the light most favorable to them at this stage of the proceeding, the Court understands their assertion to be that the ultimate length of their prison sentence may be impacted by their incarceration at ADX. Indeed, in their Response, Plaintiffs concede they are not eligible for parole, but

clarify that their alleged inability to accrue good time credit at the same rate as in their prior institutions impacts the length of their confinement. *Response to the Partial Motion to Dismiss* [#152] at 18.[9] Accepting Plaintiffs' allegations as true at this pleading stage, the Court finds that this factor weighs in favor of Plaintiffs.[10]

Finally, considering the fourth factor enunciated in *DiMarco*, namely whether the placement is indeterminate, Plaintiffs argue that their confinement at ADX is indefinite because their assignment to a new facility depends upon several factors beyond their control, including their enrollment in the Step-Down Unit Program. *Id.* at 18-19. Defendants counter that incarceration at ADX cannot be considered indefinite because of the mere existence of the Program. *Partial Motion to Dismiss* [#149] at 17-18. Although two of the Plaintiffs have been placed in the Program, their movement through the remaining stages depends upon several additional factors, including the judgment of decision makers who, to this point, have not provided details justifying their decisions. The Court notes that Plaintiffs have been incarcerated at ADX for more than five years – Saleh since February 2003; Nosair since September 2002; and Elgabrowny since August 2002 – and it remains unclear when they will be eligible for reassignment.[11] Indeed, considering

---

[9] Generally, the Court should only rely on allegations made in Plaintiffs' complaint in addressing whether they have adequately stated a claim, *Smith v. Plati*, 258 F.3d 1167, 1172 n.2 (10th Cir. 2001), but to the extent Plaintiffs' Response provides further guidance regarding the complaint's meaning and is not necessarily inconsistent with the complaint, the Court considers it.

[10] The Court notes, however, that this factor does not apply equally to all Plaintiffs. Plaintiff Nosair is serving a life sentence, and is therefore ineligible to accrue good time credits. 18 U.S.C. § 3624(b). *See Complaint* [#144] ¶ 67. As such, his indefinite incarceration at ADX would appear to have no impact on his sentence.

[11] Pursuant to the Step-Down Unit Policy, an inmate must spend a minimum of 12 months at the facility before being considered for enrollment in the Program. *ADX Step-Down*

the delay in placing Plaintiffs Saleh and Elgabrowny in the Program and the fact that Plaintiff Nosair has still not been placed in the Program – despite every Plaintiffs' alleged eligibility for placement throughout the last several years – the Court is persuaded that the indeterminate nature of Plaintiffs' confinement at ADX is at issue, such that this factor weighs in favor of Plaintiffs.[12]

Inasmuch as Plaintiffs' complaint can be interpreted to challenge their placement and continued incarceration at ADX, Plaintiffs have sufficiently alleged the deprivation of a liberty interest considering the totality of the conditions alleged in light of those asserted in *Wilkinson*, *Hill*, and *Thompson*.

Implication of a liberty interest is the threshold consideration regarding whether Plaintiffs' due process claim can go forward. Plaintiffs must also sufficiently allege that they failed to receive the appropriate level of process regarding their placement at ADX. *Wilkinson*, 545 U.S. at 224. Here, Plaintiffs allege that they were not afforded notice or an

_____

*Unit Policy* [#149-5] at 4. Plaintiffs claim they have maintained clear conduct records since their arrival at ADX and have been eligible for enrollment in the Program since the first opportunity for consideration. *Complaint* [#144] ¶¶ 77, 79, 80, 85. The Court notes that Plaintiff Nosair has been in incarcerated at ADX for approximately 70 months without being enrolled in the Program, and Plaintiffs Saleh and Elgabrowny were incarcerated for approximately 51 months and 59 months respectively before their enrollment in the Program.

[12] As in *DiMarco*, this Court considers whether the conditions complained of in Plaintiffs' complaint differ from those sustained by others. While it appears that the conditions complained of by Plaintiffs are typical of those imposed on other inmates in the general population at ADX, two things stand out to the Court. As pled in the complaint, the conditions are a drastic departure from the conditions experienced by Plaintiffs at their prior facilities before September 11, 2001, and Plaintiffs have asserted that they were arbitrarily kept in the general population at ADX while other inmates moved more quickly to less-restrictive units. *Complaint* [#144] ¶¶ 94-95. Although there may be nothing unique about the conditions each Plaintiff endures at ADX, the Court finds that this factor slightly weighs in favor of Plaintiffs considering their placements prior to September 11, 2001 and their allegation that others in the general population unit have not been similarly treated.

opportunity to be heard prior to their placement at ADX. *Complaint* [#144] ¶¶ 32-33, 73-76, 86-89, 97, 182-83. In addition, they claim that they continue to be denied adequate process in relation to their continued and indefinite incarceration at ADX. *Id.* ¶ 188. For example, they argue that they should be allowed to participate in the annual review regarding their eligibility for placement in less-restrictive units. *Id.* ¶¶ 86, 88, 196. At the time of their initial placement at ADX, Plaintiffs claim that the administrative grievance process was unavailable to them. *Response to Partial Motion to Dismiss* [#152] at 19. They also assert that even if the grievance process was available, such a process did not offer an adequate avenue for redress. As to the latter contention, while Plaintiffs acknowledge that the administrative grievance process has been available to them while incarcerated at ADX, they claim that the process is inadequate to address their continuing placement at ADX. *Id.* at 19-20. Further, Plaintiffs claim that until fairly recently, they did not fully appreciate the alleged wrongful purpose behind their placement and continued incarceration at ADX such that they could adequately grieve their injuries. *Id.* at 14. They claim that if the correct level of process had been afforded to them at the outset of their placement at ADX, including information regarding why they were being assigned there, they would have been in a position to challenge that placement and their continued confinement in a more meaningful way. Nevertheless, they dispute that the availability of the administrative grievance process after their placement at ADX constitutes adequate process for their injuries.

The requirements of due process are "flexible and cal[l] for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To determine what level of process is due, the Court considers three factors:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirements would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Moreover, "[p]risoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Wilkinson*, 545 U.S. at 225.

In *Wilkinson*, the Supreme Court found that prisoners had a liberty interest not to be placed in the State of Ohio's supermax prison without sufficient preliminary and ongoing safeguards. *Id.* at 225-30. Those safeguards included notice of the factual basis for their assignment to the supermax facility and an opportunity for rebuttal. The Court was also persuaded that adequate process was provided given that the decision passed through multiple levels of review prior to becoming final, and upon placement in the state supermax facility, the placement was reviewed again within thirty days, and then annually thereafter. Instructive to this Court is the fact that the notice and multi-level review safeguards discussed in *Wilkinson* were specific to placement and continued confinement at the supermax facility, and do not appear to be related to the standard administrative grievance process most prison facilities provide for ordinary disputes regarding conditions of confinement.

Here, the "private interest" that is implicated is the deprivation of Plaintiffs' constitutional liberty interests, specifically their interest in avoiding erroneous placement at ADX. While their interests are necessarily curtailed due to Plaintiffs' incarceration, such

interests are not left at the jailhouse door and forever surrendered. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). As in *Wilkinson*, the Court finds that these Plaintiffs have sufficiently alleged that they have a liberty interest in avoiding erroneous placement at ADX.

Regarding the risk of an erroneous deprivation of Plaintiffs' "private interest," there is no dispute that Plaintiffs were not provided notice of the basis for their placement at ADX or an opportunity to be heard prior to that placement. While there is some indication that their eligibility for the Step-Down Unit Program is reviewed on an annual basis, this review is only one step in a multi-step process which ultimately allows a prisoner to be moved out of ADX. The Step-Down Unit Program review is not a review of whether it was appropriate to place Plaintiffs at ADX in the first place. Moreover, as will be discussed in conjunction with the analysis of Claim V, given that Plaintiffs were frequently denied enrollment in the Step-Down Unit Program for a "failure to mitigate," *Complaint* [#144] ¶ 193, it is important to note that Defendant BOP's failure to provide the factual basis for Plaintiffs' placement at ADX in the first instance made these later annual determinations largely uninformative. *See Ajaj II*, 2006 WL 3797871, at *10 (noting that because ADX inmate was never given reason for incarceration at ADX, denial of admission to step down for failure to mitigate "gives him notice of nothing and therefore deprives him of any meaningful opportunity either to object to, or to appeal from, the denial of step down"). Therefore, I find that the risk of the erroneous deprivation of a liberty interest was high. Further, I find that utilizing certain procedural safeguards, such as providing a prisoner with the factual basis for his placement, as well as providing him with additional detail regarding the outcome of his Step-Down Unit Program annual review, would likely have mitigated the risk of erroneous deprivation.

Finally, regarding the Government's interest, it cannot be denied that the Government has a significant interest in managing its prison facilities and maintaining order among its personnel and inmates. *See Wilkinson*, 545 U.S. at 227. However, at this stage of the proceedings, the validity of such an interest in relation to these Plaintiffs' placement has not been sufficiently detailed. As such, at present, this factor is outweighed by the private interest involved and the risk of erroneous deprivation of that interest.

At this stage of the proceedings, I find that Plaintiffs have asserted a plausible deprivation of a liberty interest and have sufficiently called into question the level of process that they were and are afforded prior to and during their incarceration at ADX. Accordingly, Defendants' Partial Motion to Dismiss the portion of Claim IV relating to Plaintiffs' placement at ADX should be **denied**.

2. Failure to State a Procedural Due Process Claim – Claim V

a. Jurisdictional Issues

Defendants argue that Claim V should be dismissed as to Plaintiffs Saleh and Elgabrowny (hereinafter referred to in this subpart as "Plaintiffs") because both have already been placed in the Step-Down Unit Program. *Partial Motion to Dismiss* [#149] at 9-11. Defendants allege that Plaintiffs' enrollment in the Program has the effect of making this claim moot as to them and also abrogates any standing these Plaintiffs might have previously claimed. Plaintiffs counter that (1) their claims are not moot because of the voluntary cessation doctrine and (2) they have standing because they had standing at the time of the filing of their original complaint. *Response to the Partial Motion to Dismiss* [#152] at 8-13. Plaintiffs also appear to reclassify Claim V as one that not only challenges the denial of placement in the Step-Down Unit Program, but also as one that alleges that

28

"[e]ven the lowest level of the Step Down Program constitutes an atypical and significant hardship" and that "[p]lacement in Step Down does not obviate the ongoing injury of discriminatory treatment by the BOP and its agents." *Id.* at 8. As such, Plaintiffs argue that because their injury is ongoing even after their placement in the Program, they still have standing to assert this claim.

As a preliminary matter, as pled by Plaintiffs, Claim V relates to whether Plaintiffs have a liberty interest in not being denied enrollment in the Step-Down Unit Program. To the extent that Plaintiffs argue that their actual enrollment in the Program violates a liberty interest in their Response to the Partial Motion to Dismiss, the Court notes that such a claim falls squarely within Claim IV in that it challenges Plaintiffs' placement and continued confinement at ADX generally. As such, this argument does not advance Plaintiffs' position as to Claim V. Moreover, Claim V on its face does not assert a liberty interest challenge to Plaintiffs' enrollment in the Step-Down Unit Program.

There is no dispute that at the inception of this case, neither Plaintiff was in the Step-Down Unit Program. However, Plaintiffs' standing to assert Claim V at the outset of their case does not end the inquiry. A party must maintain standing throughout the litigation. *Qwest Communs. Int'l, Inc. v. FCC*, 240 F.3d 886, 891 (10th Cir. 2001) ("Standing must exist throughout the litigation."); 35A C.J.S. *Federal Procedure* § 59 (2008) ("If the plaintiff loses standing at any time during the pendency of the proceedings in the federal district court or in the appellate courts, the matter becomes moot, and the court loses jurisdiction."). Here, the Court looks to the operative complaint, which was amended in January 2008, in assessing whether Plaintiffs have standing because "an amended complaint 'supercedes an original complaint and renders the original complaint without

legal effect.'" *Mink v. Suther*s, 482 F.3d 1244, 1254 (10th Cir. 2007) (citation omitted).

There is also no dispute that as of the filing of the operative complaint, Plaintiffs had already received the remedy they were seeking, namely enrollment in the Step-Down Unit Program. The elements of standing are the existence of a particularized injury that is fairly traceable to Defendants and capable of being redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, these Plaintiffs' enrollment in the Program remedied the injury alleged in Claim V. As such, there is no remaining concrete or imminent injury that can be redressed by a favorable decision. I agree that because the complaint only seeks declaratory and injunctive relief, Plaintiffs Saleh and Elgabrowny lack standing to assert Claim V due to their enrollment in the Step-Down Unit Program.

In addition, the Court finds that Claim V is moot as to Plaintiffs Saleh and Elgabrowny. Plaintiffs seek injunctive relief – relief that can only be obtained for current or prospective injury and cannot be conditioned on a past injury that has already been remedied. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155 n.6 (10th Cir. 2005) (quoting *San Diego County Gun Rights Comm'n v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("Because plaintiffs seek declaratory and injunction relief only . . . it is insufficient for them to demonstrate only a past injury")).

Plaintiffs attempt to avoid a mootness determination by alleging that although Defendants voluntarily provided them the relief they sought, nothing would prevent Defendants from revoking Plaintiffs' placement in the Program in the future. As such, they argue that the doctrine of voluntary cessation applies. *Response to the Partial Motion to Dismiss* [#152] at 9-13. Plaintiffs explain that because Defendants' policies and procedures

would allow them to reverse their decision and remove Plaintiffs from the Program, the Court cannot be assured that the injury is not likely to reoccur. As such, Plaintiffs argue that Defendants' voluntary cessation does not serve to moot their claim. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004). However, Defendants persuasively argue that because Plaintiffs' return to the general population would be highly fact specific, the voluntary cessation doctrine is inapplicable. *Reply* [#158] at 5. This is true because "review of future instances of wrongful behavior may be quite different [from] the complained-of example that already has ceased." *Unified Sch. Dist. No. 259, Sedgwick County, Kan. v. Disability Rights Ctr.*, 491 F.3d 1143, 1150 (10th Cir. 2007). For instance, if Plaintiffs were to commit disciplinary infractions, such conduct might justify Defendants in removing them from the Program, which would have nothing to do with the present lawsuit.[13] Moreover, as Defendants have apparently determined that Plaintiffs sufficiently mitigated the reason for their placement at ADX to justify their enrollment in the Program, it seems clear that Defendants could not reverse that determination and use it as an excuse to return Plaintiffs to the general population. While they could return Plaintiffs to the general population for other legitimate reasons, e.g., the failure to abide by facility rules or keep their cell or persons clean, such determinations would be unrelated to the allegedly arbitrary failure-to-mitigate standard that Defendants had previously used to block Plaintiffs' enrollment. *See Tandy*, 380 F.3d at 1291 (recognizing mootness if "it is absolutely clear

---

[13] The Court is not persuaded by Plaintiffs' argument that Defendants enrolled them in the Step-Down Unit Program to moot this claim in their lawsuit. *Response to the Partial Motion to Dismiss* [#152] at 12. Assuming Defendants' motives are relevant, they would have had the same incentive to enroll every Plaintiff in the Program. *See Reply* [#158] at 5. The fact that Plaintiff Nosair remains unenrolled in the Step-Down Unit Program undercuts the assertion that Defendants had an improper motive here.

the allegedly wrongful behavior could not reasonably be expected to recur." (citation omitted)).

I agree with Defendants that as to Plaintiffs Saleh and Elgabrowny, Claim V is moot and that these Plaintiffs no longer have standing to pursue it. To the extent that Defendants move to dismiss Claim V as to these Plaintiffs, the Partial Motion to Dismiss should be **granted**. The Court notes, however, that to the extent that Plaintiffs are challenging their placement and continued confinement at ADX generally, the Court finds that this claim is addressed by Claim IV.

### b. Step-Down Unit Program

As noted earlier, although Plaintiffs attempt to repackage this claim as one that alleges that even the act of enrollment in the Step-Down Unit Program violates a liberty interest, this assertion is really just Claim IV stated another way, i.e., that Plaintiffs' placement and continued confinement at ADX violates a liberty interest. Claim V, as the Court interprets it, is that the denial of enrollment in the Step-Down Unit Program violates a liberty interest. Indeed, in the complaint, Claim V is titled "Plaintiffs had a liberty interest not to be denied step-down . . . ." *Complaint* [#144] at 26. Only Plaintiff Nosair has standing to assert this argument. *See supra* Part III.C.3.a.

In this regard, Plaintiff Nosair points to the criteria employed by ADX for determining whether an inmate is eligible for enrollment in the Step-Down Unit Program. *Complaint* [#144] ¶ 72. Those criteria are whether the inmate has successfully completed programs recommended by his unit leader; the inmate's overall adjustment to the institution, including his personal hygiene and cell condition; the inmate's interaction with staff; and whether the factors that led to his placement at ADX have been mitigated. *Id.* Plaintiff claims that he

has had an exemplary conduct record while incarcerated at ADX, and that he suspects that his earlier crime of terrorism and his ethnicity have played inappropriate roles in prison officials' determination not to place him in the Program. *Id.* ¶¶ 80, 89. He also alleges that although his status is reviewed on an annual basis,[14] his rejections have all been justified by a failure to sufficiently mitigate the reasons for his placement at ADX. *Id.* ¶ 87. Because he was never informed of the conduct or specific behavior that justified his assignment to ADX in the first instance, he claims this review does not provide him with the adequate level of process that is due.

At least one Court in this District has recognized that indefinite confinement at ADX without a meaningful right to step down may constitute the deprivation of a liberty interest. *See Ajaj v. United States*, No. 03-cv-01959-MSK-PAC, 2006 1305198, at *10 (D. Colo. May 11, 2006) (unpublished decision) (*"Ajaj I"*); *Ajaj II*, 2006 WL 3797871, at *10. To the extent that Plaintiff contends that his denial of enrollment in the Program has to do with his underlying crime or his ethnicity, two considerations which were also at issue in the *Ajaj* cases, "this Court is left with concerns that his liberty interest has been compromised, indefinitely, based on circumstances he can neither change nor mitigate." *See Ajaj II*, 2006 WL 3797871, at *10 n.15.

As in *Ajaj*, and considering the analysis of the *DiMarco* factors in relation to Claim IV, the Court is persuaded that Plaintiff Nosair has sufficiently pled the existence and deprivation of a liberty interest in relation to the continued denial of enrollment in the Step-

---

[14] According to the complaint, the annual review consists of the inmate receiving a statement from prison officials indicating whether he has qualified for the Step-Down Unit Program. It does not consist of notice and an opportunity for a hearing in advance of the decision. *See Complaint* [#144] ¶¶ 86-87.

Down Unit Program. Moreover, accepting the information provided in the complaint as true, Plaintiff Nosair has sufficiently pled the denial of adequate process given Defendants' failure to inform him of the circumstances behind his placement at ADX or to provide him with a meaningful opportunity to refute or mitigate those circumstances in relation to Defendants' review of his eligibility for the Program.[15]

At this stage of the proceedings, the Court is persuaded that Plaintiff Nosair has stated a plausible claim for deprivation of a liberty interest without sufficient process.[16] Accordingly, the Partial Motion to Dismiss Claim V as to Plaintiff Nosair should be **denied**.

IV. Conclusion

For the reasons stated above, the Court RECOMMENDS that Defendants' Official Capacity Motion to Dismiss [#111] and Part IV of the Partial Motion to Dismiss [#149] be **GRANTED**.

The Court FURTHER RECOMMENDS that Parts I-III of the Defendants' Partial Motion to Dismiss [#149] be **GRANTED in part and DENIED in part**.

The Court summarizes its Recommendation as follows:

---

[15] Defendants contend *Ajaj I* supports their argument that Plaintiff Nosair's step-down claim should be dismissed. Ajaj's step-down claim was dismissed because Ajaj failed to "identify the process he believe[d] should have been, but was not afforded." *Ajaj I*, 2006 WL 1305198, at *10. However, prior to dismissal, the Court specifically recognized that Ajaj had sufficiently pled the deprivation of a liberty interest. *See id.* Unlike *Ajaj I*, Plaintiff Nosair has provided sufficient detail regarding the level of process he was afforded and the type of process he claims he was due, but did not receive. For instance, Plaintiff Nosair has alleged that he was not allowed to participate in the annual review of his eligibility for the Program. As such, dismissal of the step-down claim in *Ajaj I* is distinguishable from the present case.

[16] Although the Court agrees at this preliminary stage that the step-down claim creates an independent basis for recovery, the Court also notes that this claim seems closely related to, and adequately addressed by, Claim IV. Plaintiff Nosair should consider whether to voluntarily dismiss this claim for the purposes of pleading and case clarity.

(1) The Court recommends that the individually-named Defendants be DISMISSED with Prejudice;

(2) The Court recommends that Claim IV of Plaintiffs' First Amended Consolidated Complaint be DISMISSED inasmuch as it alleges an injury relating to Plaintiffs' post-September 11, 2001 segregation prior to their placement at ADX;

(3) The Court recommends that Claim V of Plaintiffs' First Amended Consolidated Complaint be DISMISSED as to Plaintiffs Saleh and Elgabrowny; and

(4) The Court recommends that Claim IV (as to all Plaintiffs' placement and continued incarceration at ADX) and Claim V (as to Plaintiff Nosair only) go forward.[17]

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

---

[17] These claims are in addition to Claims I-III, which Defendants have not sought to dismiss. As noted earlier, Claim VI was dismissed through voluntary stipulation of the parties [Docket No. 175].

Dated:  July 29, 2008                              BY THE COURT:

                                                   _s/ Kristen L. Mix_____
                                                   U.S. Magistrate Judge
                                                   Kristen L. Mix