**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Philip A. Brimmer**

Civil Action No. 05-cv-02467-PAB-KLM

MOHAMMED SALEH,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
MICHAEL MUKASEY,
HARLEY LAPPIN,
JOYCE K. CONLEY,
MICHAEL NALLEY,
RON WILEY, and
MICHAEL MERRILL, in their official capacities,

      Defendants.

_____

Civil Action No. 06-cv-01747-PAB-KLM

EL-SAYYID A. NOSAIR,

        Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
MICHAEL MUKASEY,
HARLEY LAPPIN,
JOYCE K. CONLEY,
MICHAEL NALLEY,
RON WILEY, and
MICHAEL MERRILL, in their official capacities,

        Defendants.

_____

Civil Action. No. 07-cv-00021-PAB-KLM

IBRAHIM ELGABROWNY,

                    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
MICHAEL MUKASEY,
HARLEY LAPPIN,
JOYCE K. CONLEY,
MICHAEL NALLEY,
RON WILEY, and
MICHAEL MERRILL, in their official capacities,

                    Defendants.

_____

## ORDER ACCEPTING IN PART AND OVERRULING IN PART
## MAGISTRATE JUDGE'S RECOMMENDATIONS

_____

        This matter is before the Court on defendants' amended motion to dismiss the

individually-named defendants [Docket No. 111], filed October 18, 2007, and

defendants' partial motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(1) and 12(b)(6) [Docket No. 149], filed February 12, 2008.  Both motions were

referred to Magistrate Judge Kristen L. Mix [Docket Nos. 112, 150] and were fully

briefed by the parties [Docket Nos. 115, 120, 152, 158].  Magistrate Judge Mix issued a

thorough Recommendation of United States Magistrate Judge [Docket No. 196] on July

29, 2008, which was altered by her Amended Recommendation of United States

Magistrate Judge [Docket No. 258] on March 6, 2009.  Plaintiffs timely filed objections

to both [Docket Nos. 197, 260].  The Court takes up defendants' motions in light of

plaintiffs' objections and conducts the requisite de novo review.

## I.  BACKGROUND

The magistrate judge's initial recommendation contains a comprehensive recitation of the factual and procedural history of this case.  Briefly, plaintiffs are incarcerated for their roles in the 1993 World Trade Center bombings.  Rec. of U.S. Mag. Judge [Docket No. 196] ("Rec.") at 3.  Immediately following the September 11, 2001 attacks on the World Trade Center, plaintiffs were placed in segregation at the facilities where they were housed at the time.  *Id.*  In late 2002 and early 2003, plaintiffs were reassigned to the United States Penitentiary, Administrative Maximum Prison ("ADX") in Florence, Colorado.  *Id.*  Plaintiffs filed this lawsuit challenging the conditions of their confinement.

At the time the magistrate judge issued her recommendation, the operative complaint was the First Amended Consolidated Complaint [Docket No. 144].  In that complaint, plaintiffs alleged violations of their: First Amendment rights to practice religion (Claim 1); religious rights under the Religious Freedom Restoration Act (Claim 2); equal protection rights (Claim 3); procedural due process rights concerning their September 11, 2001 placement in segregation and their later transfer to ADX (Claim 4); and procedural due process rights concerning their denial of entry in ADX's "Step-Down Program," by which plaintiffs could eventually qualify to move to a less restrictive prison unit (Claim 5).[1]  Since that time, the parties have stipulated to the dismissal of counts 1, 2, and 3 [Docket No. 244] and have filed a Second Amended Consolidated Complaint

---

[1]  The First Amended Consolidated Complaint also alleged a violation of plaintiffs' Eighth Amendment rights (Claim 6), but the parties stipulated to the dismissal of this claim prior to the magistrate judge issuing her recommendation.  Rec. at 6 n.4.

that reflects these dismissals [Docket No. 251].[2]  Thus, the only pending claims are

plaintiffs' procedural due process claims 4 and 5.

The magistrate judge made three specific recommendations to which plaintiffs

object.  First, she recommended that all individual defendants be dismissed, leaving the

Federal Bureau of Prisons as the only defendant.  Rec. at 9-12.  Second, she

recommended that plaintiffs' claims concerning lack of due process in their September

11, 2001 transfer to segregation (part of claim 4) be dismissed as time-barred.  *Id.* at

13-17.  Finally, she recommended that plaintiff Elgabrowny's Step-Down Program claim

(claim 5) be dismissed for lack of standing and mootness.  *Id.* at 28-32; Am. Rec. of

U.S. Mag Judge [Docket No. 258] ("Am. Rec.") at 2-4.  I consider these objections in

turn.

## II.  ANALYSIS

### A.  Standard of Review

When a party files timely objections to a magistrate judge's recommended

disposition of a dispositive motion, a district court reviews the objected-to portion of the

recommendation de novo.  Fed. R. Civ. P. 72(b).

### B.  Dismissal of the Individual Defendants

Defendants urge dismissal of the individually-named defendants, all of whom

were sued in their official capacity, arguing that this suit is really one against the

---

[2]  The Second Amended Consolidated Complaint states that "no order of dismissal of [claims 1, 2, and 3] has issued from the court."  2d Am. Consol. Compl. [Docket No. 251] ("2d Am. Compl.") at 25.  However, the stipulated dismissal was filed pursuant to Fed. R. Civ. P. 41(a)(1), which provides for voluntary dismissal "[w]ithout a [c]ourt [o]rder."  Thus, I consider claims 1, 2, and 3 to be dismissed.

-4-

Federal Bureau of Prisons ("BOP").  Am. Mtn. to Dismiss [Docket No. 111] ("Indiv. Defs. MTD"); *see also* Mtn. for Partial Dismissal [Docket No. 149] ("Partial MTD") at 27-29. The magistrate judge agreed with defendants, finding the individual officials to be redundant and dismissal to be warranted in the interest of judicial efficiency.  *Id.* at 11.

Plaintiffs object, in part, to this recommendation.  Pls.' Obj. to Rec. of U.S. Mag. Judge [Docket No. 197] ("Pls.' Obj.") at 3-7.  Plaintiffs do not contest the court's authority to dismiss the individual defendants in the interest of justice and efficiency. *See id.* at 6.  Nor do they object to the dismissal of defendants Lappin, Conley, Nalley, Wiley, or Merrill.  *Id.* at 3.  Their objection is that the Attorney General of the United States,[3] who has authority reaching beyond the BOP, should be retained as an individual defendant because his role outside of the BOP is relevant to plaintiffs' claims. Pls.' Obj. at 4-6.

Plaintiffs' own allegations belie their argument.  Plaintiffs allege the following: that the Attorney General "serves as the chief law enforcement officer for the federal government," is "charged with ensuring public safety against threats foreign and domestic," and is "the person who is ultimate [sic] in charge of" the BOP; that on September 11, 2001, the Attorney General "directed Defendant BOP to remove all inmates who had previous to that day been designated as terrorists from general population and placed in administrative segregation"; and that plaintiffs were placed in segregation "in compliance with the directive of [the] then-Attorney General."  *Id.* at 3-4.

---

[3]  At the time plaintiffs filed their objections, Michael Mukasey was the Attorney General of the United States.  On February 3, 2009, Eric H. Holder, Jr. was sworn in as the Attorney General.  General Holder would thus be substituted for General Mukasey as a defendant.  *See* Fed. R. Civ. P. 25(d).

Fairly read, these allegations are confined to the Attorney General's role vis-a-vis the BOP.  I agree with the magistrate judge that, given the presence of the BOP itself in the lawsuit, the Attorney General is not necessary to the relief plaintiffs seek and that his dismissal is appropriate in the interest of judicial efficiency and economy.

Plaintiffs also contend that relief against the BOP may not bind the Attorney General "to the extent he acts under his authority outside of his organizational responsibility for the BOP." *Id.* at 6.  However, the relief plaintiffs seek – a declaration that their placement in segregation was without due process and an injunction returning them to their original confinement status, and a declaration that their denial of entry into ADX's Step-Down Program was similarly without process and an injunction giving them "proper credit," *see* 2d Am. Compl. at 30 – is tied to their status as inmates of the BOP. If the Court were to order the BOP to comply with plaintiffs' requested relief, the Attorney General, insofar as the BOP is within the Department of Justice, would be similarly bound.

Finally, plaintiffs express concern that dismissal of the Attorney General would permit the BOP to avoid relevant discovery obligations.  Pls. Obj. at 6 n.1.  However, as the magistrate judge noted, "[i]f, after the dismissal of the individually-named Defendants, Plaintiffs determine that they are hindered in the discovery process, they may seek relief from the Court at that time."  Rec. at 11.  Dismissal of the individual defendants does not alter Rule 26's prescription that discovery can be had on any non-privileged matter relevant to the claims or, on a showing of good cause, any matter relevant to the subject matter of the lawsuit.  Fed. R. Civ. P. 26(b)(1).

For these reasons, I agree with and adopt the magistrate judge's recommendation to dismiss the individual defendants.

### C.   Timeliness of September 11, 2001 Segregation Claim

Defendants also seek to dismiss plaintiffs' due process claim regarding their transfers to segregation on September 11, 2001, on the ground that the claim was filed outside of the applicable six-year statute of limitations.  Partial MTD at 20-21.  In response, plaintiffs argue that the limitations period should be equitably tolled because they did not become aware of the reasons for their September 11 transfer "until early 2007."  Resp. to Mtn. for Partial Dismissal [Docket No. 152] ("Resp. to Partial MTD") at 14.  The magistrate judge recommended dismissal, finding that the six-year statute of limitations ran on September 11, 2007, that plaintiffs did not raise this claim until after that date, and that the limitations period should not be equitably tolled.  Rec. at 13-17.

I agree with the magistrate judge's recommendation.  By their own admission, plaintiffs were aware of the reasons for their transfer in early 2007, months before the expiration of the statute of limitations.  Rec. at 14.  However, plaintiffs did not file their claim until after the limitations period had run.[4]  *Id.*  Equitable tolling applies only where a plaintiff is "pursuing his rights diligently."  *Lawrence v. Florida*, 549 U.S. 327, 336 (2007).  Discovering new information with months left to amend, but failing to file that

---

[4]  The magistrate judge found that the limitations period expired on September 11, 2007, and that plaintiffs did not file their amended complaint containing the September 11 transfer claim until January 2008.  Rec. at 13.  In their objections, plaintiffs contend that they should be deemed to have "filed" this new complaint on November 23, 2007, when they sought leave to amend.  Pls.' Obj. at 7.  But whether the filing date is late November 2007 or early January 2008, the fact remains that plaintiffs did not file their claim until well after the expiration of the statute of limitations.

amendment until after the limitations period had run, does not demonstrate the requisite diligence.

Plaintiffs also argue that they have "continuously been confined in segregation" since September 11, 2001, and thus the September 11 transfer should be considered an integral part of their segregation claim. Pls.' Obj. at 8-9. More specifically, plaintiffs contend that the transfer "was the beginning of Defendants' ongoing pattern of discrimination against Plaintiffs on the basis of their religion and national origin." Resp. to Partial MTD at 15. However, as noted by the magistrate judge, plaintiffs claims are for lack of process, not for religious discrimination. Plaintiffs' "pattern of discrimination" argument does not save their untimely procedural due process claim from dismissal.

As with the dismissal of the Attorney General as an individual defendant, plaintiffs' opposition to the dismissal of their September 11 transfer claim appears to rest, in part, on a fear that their access to discovery will be unfairly limited. *See* Pls. Obj. at 9 & n.2. ("The entirety of the Plaintiffs' time in segregation should properly be the subject of factual inquiry in support of this claim, since each of their 'reasons for placement' at the ADX originate in this time period . . . ."). Again, the Court's ruling does nothing to limit the scope of permissible discovery under Rule 26. To the extent that information about plaintiffs' September 11 transfer is relevant to their later transfer to ADX, discovery of that information may well be proper. But that issue is not before the Court. If plaintiffs feel they are entitled to certain discovery but defendants refuse to produce, plaintiffs may seek relief from the Court at that time.[5]

---

[5] In their objections to the magistrate judge's amended recommendation, plaintiffs advance additional arguments that their claim is not time-barred. Pls.' Obj. to

**D.   Standing/Mootness Regarding Plaintiff Elgabrowny's Step-Down Claim**

At ADX, an inmate must be enrolled in the Step-Down Program in order to move to a less-restrictive housing unit.  Rec. at 4.  When plaintiffs' lawsuits were originally filed, none of the plaintiffs was in the program.  *Id.*  However, by the time defendants filed their partial motion to dismiss, plaintiffs Saleh and Elgabrowny had been placed into Step-Down.  Partial MTD at 7.  Defendants contended that this fact deprived those plaintiffs of standing to challenge their lack of placement and mooted the claim as to them.  *Id.*  The magistrate judge agreed, recommending dismissal of those plaintiffs' Step-Down claims.  Rec. at 28-32.

After the magistrate judge issued her original recommendation, plaintiff Saleh was removed from the Step-Down Program.  *See* Am. Rec. at 2-3.  Defendants thereafter withdrew their contention that this claim was moot as to plaintiff Saleh.  *Id.* at 3.  Given this concession, the magistrate judge filed an amended recommendation that recommended, as to plaintiff Saleh, the Step-Down Program claim should go forward on the merits.  *Id.* at 4.  The magistrate judge did not change her recommendation that Elgabrowny's claim fails for lack of standing and mootness.  Plaintiffs object to this jurisdictional finding.  Pls.' Am. Obj. at 3-9.

I turn first to the issue of standing.  The familiar tenets of the doctrine require a plaintiff to show that he was injured, that the injury is fairly traceable to the defendant's

---

Am. Rec. of U.S. Mag. Judge [Docket No. 260] ("Pls.' Am. Obj.") at 9-14.  However, the amended recommendation did not address the statute of limitations; it dealt only with the justiciability of plaintiffs' Step-Down Program claims.  Plaintiffs do not get a second bite at the apple to argue the limitations issue.  Thus, I have not considered any statute of limitations arguments raised in the objections to the amended recommendation.

conduct, and that the injury would be redressable by a decision in his favor. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006).  Defendants argue that because Elgabrowny is already in Step-Down (and was when his most recent complaint was filed), he cannot show the requisite injury.  Partial MTD at 9-10.  In response, plaintiffs note that, at the time the action was initially commenced, Elgabrowny had not yet been approved for the program, and they argue that he therefore demonstrated sufficient injury at that time.  Resp. to Partial MTD at 8.  The question, then, is whether I look to the time of the original complaint, or the more recent amendment, for the purposes of the standing analysis.

Standing is determined "at the time the action commences." *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000); *see also Aid for Women v. Foulston,* 441 F.3d 1101, 1109 (10th Cir. 2006).  This would seem to suggest that the filing of the initial complaint is the relevant time for evaluating standing.  However, given the general confusion surrounding the standing doctrine, *see Schutz v. Thorne*, 415 F.3d 1128, 1133 (10th Cir. 2005) ("[S]tanding analysis is often as confusing as it is fundamental."), the answer to that question is not so clear.  *Compare Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 n.3 (Fed. Cir. 2005) ("The initial standing of the original plaintiff is assessed at the time of the original complaint, even if the complaint is later amended."), *with In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("[I]n cases where a plaintiff has filed an amended complaint, federal courts must resolve questions of subject matter jurisdiction by examining the face of the amended complaint.").

Defendants claim that the Supreme Court has "held" that standing must be established at the time of an amended complaint.  In *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), the case cited by defendants, the Court considered whether certain detainees had received a "prompt" probable cause determination following their warrantless arrest.  *Id.* at 47.  It is true that the Court in *McLaughlin* looked to the facts as they existed at the time of the second amended complaint to find standing.  *Id.* at 51.  ("[A]t the time the second amended complaint was filed, plaintiffs . . . had been arrested without warrants and were being held in custody without having received a probable cause determination, prompt or otherwise.  Plaintiffs alleged in their complaint that they were suffering a direct and current injury as a result of this detention . . . .").  However, this statement is far from a "holding" that the amended complaint is always operative for the purposes of standing.  Indeed, as noted by the Sixth Circuit, "[a] careful reading of [*McLaughlin*] demonstrates that the second amended complaint was important not because it was the operative pleading, but because it was that complaint which named 'three additional plaintiffs' who were 'still in custody' at the time the complaint was filed, and who were the plaintiffs found to have standing by the Court."  *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004).  The lesson of *McLaughlin* seems to be that standing is determined at the time the relevant claim is raised or party is joined.  In any case, the *McLaughlin* rule is not that a court must always look to the time of the last amended complaint.

Assessing standing from the time a claim is first asserted is consistent with the common-sense understanding of the admonition that "[s]tanding is determined as of the

time the action is brought." *Aid for Women,* 441 F.3d at 1109-10 (quoting *Nova Health*

*Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005)).  An amended complaint does not

"bring" an action; the original complaint does.  Fed. R. Civ. P. 3 ("A civil action is

commenced by filing a complaint with the court.").  Moreover, once a claim is asserted,

the court's power to continue to entertain that claim is better thought of as an issue of

mootness, not standing.[6]  *RMA Ventures California v. SunAmerica Life Ins. Co.*, 576

F.3d 1070, 1073 n.6 (10th Cir. 2009) ("'Mootness has been described as the doctrine of

standing set in a time frame: The requisite personal interest that must exist at the

commencement of litigation (standing) must continue throughout its existence

(mootness).'" (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22

(1997))).  Thus, I will look to the facts as they existed at the time plaintiff Elgabrowny

asserted his Step-Down claim.[7]

---

[6]  The Tenth Circuit has occasionally suggested that "standing" must exist throughout the litigation.  *See, e.g.*, *Qwest Commc'ns Int'l, Inc. v. FCC*, 240 F.3d 886, 891 (10th Cir. 2001); *Powder River Basin Res. Council v. Babbitt*, 54 F.3d 1477, 1484-85 (10th Cir. 1995).  However, recently, the court clarified that this is really a mootness issue.  *Nova Health*, 416 F.3d at 1155 n.5 ("Although we used standing terminology [in *Powder River*], it seems that this was really a mootness question.").

[7]  The Tenth Circuit's decision in *Mink v. Suthers*, 482 F.3d 1244 (10th Cir. 2007), relied on by the magistrate judge, is not to the contrary.  In *Mink*, the plaintiff brought suit to enjoin various law enforcement officials from enforcing Colorado's criminal libel law.  *Id.* at 1248-49.  Shortly after plaintiff filed his complaint, the district attorney's office announced that it would not prosecute the case.  *Id.* at 1254.  A month later, plaintiff filed an amended complaint.  *Id.*  In determining whether plaintiff had standing in light of the district attorney's declination, the court began its analysis by noting that "standing is determined at the time the action is brought, and we generally look to when the complaint was first filed, not to subsequent events.  *Id.* at 1253-54 (citing *Laidlaw*, 528 U.S. at 180; *Gandy*, 416 F.3d at 1153).  Even so, the court determined that, given the "unique timeline of events," *i.e.*, the declination immediately preceding the amended complaint, it would look to the amended complaint for purposes of standing.  *Id.* at 1255 ("By jumping the gun and filing a complaint for prospective

Those facts demonstrate standing.  On April 6, 2007, Elgabrowny filed a complaint asserting that defendants "ha[d] continuously denied plaintiff transfer from solitary confinement to the step down unit without any legitimate justification," and that this action violated his Fifth Amendment procedural due process rights.  *See* Case No. 07-cv-00021, Docket No. 16 at 7-10.  He was not placed into the Step-Down Program until more than three months later.  *See* 2d Am. Compl. ¶ 81.  Thus, at the relevant time – April 6, 2007 – plaintiff was still suffering his alleged injury.  His later enrollment in the program does not "remove" standing.  *See Nova Health*, 416 F.3d at 1155 n.5.

The more difficult question is whether Elgabrowny's enrollment in the Step-Down Program has mooted his claim.  Typically, "'[i]f an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed.'"  *Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 891-892 (10th Cir. 2008) (quoting *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997)).  However, as defendants admit, the only reason Elgabrowny's injury has been "healed" is because they "voluntarily ceased the allegedly violative conduct."  Partial MTD at 10.  "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"  *Laidlaw*, 528 U.S. at 189 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).  Rather, a defendant who argues that

---

relief, a plaintiff cannot retain standing where the prosecutor immediately concludes the statute cannot be constitutionally enforced.").

Although *Mink* looked to the amended complaint, it appears that it did so as an exception to the general rule that standing should be determined at the outset of the suit.  Unlike *Mink*, there are no "unique" circumstances present in this case that would justify a similar exception.

voluntarily cessation of its conduct mooted a claim faces a "heavy burden" of showing

that "it is absolutely clear that the allegedly wrongful behavior could not reasonably be

expected to recur." *Id.* (quotations omitted).

Plaintiffs argue that this is the paradigmatic case for the voluntary cessation

doctrine: if the Court dismisses their claim, defendants could simply remove

Elgabrowny from the Step-Down Program.  Resp. to Partial MTD at 12.  Defendants

respond, and the magistrate agreed, that the voluntary cessation doctrine is

inapplicable here.  Defendants claim that, even though Elgabrowny could be removed

from the program, such a removal would likely be unrelated to the reasons enrollment

was initially denied, and thus defendants' future conduct would be different from their

present, allegedly wrongful behavior.  Rec. at 31 (citing *Unified Sch. Dist. No. 259 v.*

*Disability Rights Ctr.*, 491 F.3d 1143, 1150 (10th Cir. 2007) (finding the voluntary

cessation doctrine inapplicable where any future wrongful behavior "may be quite

different [from] the complained-of example that already has ceased")).

The problem with defendants' argument is that it misapprehends the "wrongful

behavior" of which plaintiffs complain.  Plaintiffs allege that they must show they have

"successfully mitigated" the factors which led to their placement in ADX in order to

qualify for Step-Down.  2d Am. Compl. ¶ 72.  As they were never told why they were put

in ADX, they contend they cannot challenge their denial of entry in the Step-Down

Program, and that this constitutes a denial of due process.  *Id.* ¶¶ 198-201.  Thus, if

Elgabrowny is removed from the Step-Down Program, even if for "legitimate" reasons,

he would once again be in the position of having to show "successful mitigation" of

factors of which he remains unaware.  Defendants' allegedly wrongful behavior –

-14-

refusing to tell Elgabrowny why he is in ADX and then denying his entry into the Step-Down Program for failure to demonstrate mitigation – could therefore recur.  Under these circumstances, defendants have not met the "heavy burden" to demonstrate that Elgabrowny's claim is moot.

On this issue, then, I overrule the magistrate judge's recommendation.  Plaintiff Elgabrowny has standing to assert his due process claim related to the Step-Down Program (claim 5), and his entry into that program does not render his claim moot.

### E.  Other Recommendations

The magistrate judge also found that plaintiffs' due process claim concerning their transfer to ADX (part of claim 4) and plaintiffs Nosair and Saleh's due process claim concerning the Step-Down Program (claim 5) were plausible.  Therefore, she recommended that defendants' motion to dismiss those claims be denied.  Rec. at 17-28, 32-34.  Defendants do not object to these recommendations.  In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate.  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").  I have reviewed these remaining recommendations to satisfy myself that there is "no clear error on the face of the record."[8]  *See* Fed. R. Civ. P. 72(b), Advisory

---

[8]  This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b).

Committee Notes.  Based on this review, I have concluded that these recommendations are a correct application of the facts and the law.

**III.  CONCLUSION**

For the foregoing reasons, it is

ORDERED that the Recommendation of United States Magistrate Judge [Docket No. 196] and Amended Recommendation of United States Magistrate Judge [Docket No. 258] are ACCEPTED in part and OVERRULED in part, as stated herein.  It is further

ORDERED that defendants' amended motion to dismiss the individually-named defendants [Docket No. 111] is GRANTED.  The individually-named defendants are DISMISSED without prejudice.  It is further

ORDERED that defendants' partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) [Docket No. 149] is GRANTED in part and DENIED in part.  Specifically, Claim 4 of plaintiffs' Second Amended Consolidated Complaint [Docket No. 251] is DISMISSED to the extent that it challenges plaintiffs' September 11, 2001 transfer to segregation.  The remainder of Claim 4, relating to plaintiffs' confinement at ADX, and Claim 5, relating to plaintiffs' denial of enrollment in the Step-Down Program, are permitted to go forward at this point.

DATED September 29, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge